**BICKSLER v. UNITED STATES.**

No. 1229.

Municipal Court of Appeals for the District of Columbia.

Argued June 30, 1952.

Decided July 25, 1952.

Harry J. Ahern, Washington, D. C., for appellant.

Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., with whom Charles M. Irelan, U. S. Atty., Joseph M. Howard and Paul F. Leonard, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

This case, like King v. United States,[1] was brought here by a defendant who had been convicted of violating D.C.Code.1940, Supp. VII, § 22–2701, which forbids soliciting for immoral or lewd purposes. As in the King case this appellant says he was entitled to an acquittal under the rules announced in Kelly v. United States, D.C. Cir., 194 F.2d 150.

As in the King case we have studied the evidence minutely, applying the rules laid down in the Kelly decision. We have no doubt that the evidence in this record supplied an even firmer foundation for a finding of guilt than the evidence in the King case. The complaining witness was a

4. Perlich v. District of Columbia, D.C. Mun.App., 90 A.2d 227, and cases there cited.

1. D.C.Mun.App., 90 A.2d 229.

policeman, Costanzo by name, who was in plain clothes at the time of the arrest. He was making a routine check of a men's room in a downtown moving picture theatre. He said defendant came into the room and in his presence engaged in an act of onanism; that defendant then left the restroom and was seen by Costanzo on a stair-landing leading to another men's room; that defendant was then making unmistakably suggestive movements and initiated a conversation with Costanzo with the words, "Have you got a place to go?"; that defendant then used certain words and made certain suggestions and proposals which could leave no doubt that he wished to engage in acts of perversion. As they started out of the theatre together the arrest was made.

In addition to Costanzo the Government presented as a witness another officer, Klopfer, and he testified that he saw defendant in the company of Costanzo in the theatre on the night in question; that he heard defendant admit at the police station after his arrest that he had used terms which apparently have special significance among sexual deviates.

Defendant denied that he started the conversation but insisted that Costanzo followed him out of the restroom and that he was first greeted by Costanzo who then solicited him. Defendant admitted that he used some of the terms attributed to him but denied that he was thinking of sex or that the conversation had any reference to sex. The import of his testimony was that he was merely exchanging teasing words of banter, or playing a game with Costanzo to find out why the latter was "bothering" him by following him around.

Defendant argues that if an invitation to sodomy was made it was by Costanzo. This argument stems from the following part of Costanzo's testimony: "I asked him where he was going to do all this. He said, 'I have no place. How about you?' I said, 'Well, I have a car parked outside.' He said, 'O. K. Let's use that.'" The argument is that since Costanzo mentioned a specific place, it was he who did the soliciting.

The question of whether a solicitation occurred and by whom is a question of fact, where as here there is conflicting testimony and conflicting inferences may reasonably be drawn therefrom. These words of Costanzo must be considered with the rest of his testimony. He said defendant made suggestive movements, approached him with "Have you got a place to go?", and made indecent proposals. We think that would have been sufficient in itself to have established that there was an invitation to go "any place" for the purpose of committing an immoral act within the meaning of the governing Code section. The officer was then certainly within the permissible bounds of his duty in attempting to develop a stronger and surer case. He merely asked, "where he was going to do all this," and in response to an inquiry by defendant stated, "I have a car outside." Defendant then made his invitation more specific with, "O. K. Let's use that." We think it cannot be said that this evidence established as a matter of law that it was Costanzo who extended the invitation.

Defendant next contends that proper weight was not given the testimony of a character witness who appeared in his behalf. This witness was a retired lady who had known the defendant for about four years and who lived in his home on two different occasions for a total of some eight months. She said she had discussed with others the general character of defendant and that his reputation for good morals and veracity was excellent. The testimony of this single witness cannot reasonably be compared to the "abundant" character evidence which was presented in the Kelly case, supra. Again, what we said in King v. United States, supra, is applicable here. We do not understand the Kelly decision to hold that an acquittal must follow whenever evidence of good character is presented.

In announcing his findings the trial judge said: "Bearing in mind the Court of Appeals' decision [in the Kelly case], the over-all evidence in this case and the reasonable deductions to be drawn from the evidence, and the demeanor of the defendant on the witness stand, the court can

reach only one conclusion and that is the defendant is guilty as charged."

We cannot say that the trial judge failed to receive and consider the testimony of the arresting officer with great caution. We cannot say that the character evidence was such as to require an acquittal as a matter of law. And we can by no means say that there was a lack of "corroboration of the circumstances," in view of defendant's own story on the witness stand.

Affirmed.