## KING v. UNITED STATES.

### No. 1230.

Municipal Court of Appeals for the District of Columbia.

Argued June 30, 1952.

Decided July 25, 1952.

Harry E. Taylor, Jr., Washington, D.C., for appellant.

Edward O. Fennell, Asst. U. S. Atty., Washington, D. C., with whom Charles M. Irelan, U. S. Atty., Joseph M. Howard and Lewis A. Carroll, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Again we are called upon to decide whether evidence was sufficient to sustain a

conviction on a charge that a defendant violated a section of our Code [1] which makes it a crime for any person to invite, entice, persuade any person to accompany, etc., him or her to any place for any immoral or lewd purpose, or to address for any of those purposes.

The conviction in this case followed a trial without a jury, at which was heard the testimony of two police officers, the defendant, and several character witnesses. Reversal is urged primarily on the claim that the trial court did not correctly apply the law stated in Kelly v. United States, U.S.App.D.C.1952, 194 F.2d 150, 155.[2] Therefore we shall carefully examine the evidence in all its parts and as a whole to determine, by way of comparison with the facts in the Kelly case, whether it will support a conviction under the rules of proof there laid down. There the court pointed out the severe social stigma resulting from convictions for violating the statute with which we are now concerned, and especially counselled trial judges in three respects when dealing with these cases that:

(1) the testimony of a single witness to a verbal invitation to sodomy should be received and considered with great caution;

(2) evidence of good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt; and the circumstances may be such that an established reputation for good character, if relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing;

(3) trial courts should require corroboration of the circumstances surrounding the parties at the time.

Examining the evidence in the light of those rules the court said, "we find it short of the proof required for conviction", and later in the opinion said that the "evidence inescapably * * * produces a reasonable doubt as to guilt." Our task in the case before us is to apply the rules just stated and to determine whether the evidence in this record will support a conviction.

The evidence disclosed that Costanzo, a policeman in plain clothes was walking east on H Street, which is the north side of Lafayette Park, at about 2:15 in the morning. The defendant who was driving east on H Street stopped his car, and according to Costanzo, asked where he was going. Costanzo's reply was that he was "just walking," and defendant invited Costanzo into the car. According to Costanzo the defendant invited him to accompany defendant to his house for an immoral purpose. The alleged solicitation occurred while they were in defendant's car on a public street somewhere in the vicinity of Lafayette Park. Defendant was then arrested and taken to a police station where, Costanzo testified, he confessed his guilt and stated his willingness to pay "any fine." This was in the presence of another officer, Klopfer, who corroborated Costanzo. At the trial defendant admitted that he stopped his automobile and invited Costanzo into it. He explained that he thought Costanzo to be a fellow-employee whom he knew. Defendant also admitted that a conversation occurred while Costanzo was in the car but denied that he made any solicitation or improper suggestion. Defendant's testimony was that he thought Costanzo was "sick"; that defendant became afraid of him (though Costanzo was a much smaller man than defendant), and he asked him if he wanted something to eat, hoping in that way to get rid of him instead of flatly asking him to get out or forcibly putting him out. Defendant's testimony was in effect that if any solicitation was made it was by Costanzo and not by him.

Eight persons gave character evidence for defendant, and said they had no knowledge of any abnormal sex tendencies on his part. One of the witnesses was a nurse who was defendant's steady girl-friend, one was his employer-supervisor, and five were co-workers who lived with

---

1. Code 1940, Supp. VII, § 22–2701.

2. Reversing our decision in Kelly v. United States, D.C.Mun.App., 73 A.2d 232.

him in a three-bedroom house in Falls Church, Virginia. The eighth character witness was a lady who took accordion lessons from defendant, as did her son.

Now, to compare the factual aspects revealed on this appeal with those in the governing Kelly case. There, testimony was presented which indicated that the arresting officer had testified falsely that he had made no complaint about Kelly to the Probation Officer; also that he had a special interest in prosecuting the case. Here, such features do not appear. It was pointed out in the Kelly decision that the accused knew his roommate was in his apartment at the very time he invited the officer to go there with him. In this case the defendant once testified that one of his fellow-tenants was known to him to be at home at the time of the alleged solicitation; but on cross-examination he contradicted himself and said none of his five fellow-tenants were at home that night, but were working. In the Kelly case the accused made a most vehement denial of any guilt or wrongdoing when he was placed under arrest. By contrast the defendant here, according to the second officer, Klopfer, did not deny his guilt at the police station and stated that he was willing to "pay any fine." This the defendant denied; he said the alleged confession was made by another person who was in custody at the station house at the same time. Also it should be noted that despite defendant's denial that he made any solicitation, parts of what he said were by his own account of the conversation reasonably subject to be interpreted as words of sexual suggestion and invitation.

As to corroboration of circumstances surrounding the parties at the time, the third of the guides announced in the Kelly opinion, such as presence at the alleged time and place and the fact that some conversation was had: Corroboration of the fact that the officer was invited into the car by defendant was furnished by defendant himself. Corroboration of happenings following the arrest, including the alleged confession, was furnished by Officer Klopfer.

From this review of the evidence it is apparent that the difference in testimony between the only two persons who were parties to the alleged solicitation presented factual issues. Under the first of the principles announced by the Kelly case, the testimony of the single witness, Costanzo, should have been "received and considered with great caution." And the testimony of the single witness having been disputed by the accused and character evidence offered in his behalf, the third principle announced in the Kelly case became applicable. The testimony of the single witness may have been so persuasive and of such quality as to warrant conviction when weighed against the denials of the accused. But when evidence of good character was presented it may have been of such quality that, when considered with other evidence, it became sufficient to create a reasonable doubt as to the guilt of the accused.

Was the trial judge then in error when he decided that the testimony for the prosecution was more credible than that for the defense? And was he in error when he concluded that the character evidence did not create a reasonable doubt in his mind?

We do not understand the Kelly decision to hold that if the prosecution presents but a single witness to a verbal invitation to sodomy and the testimony is challenged by the defendant an acquittal must follow in all cases. The Kelly case does not remove from the trial court, when sitting without a jury, its traditional function of observing and passing on the credibility of witnesses. Neither do we understand it to require an acquittal solely because there is evidence of the good character of the accused. Certainly that case does not make a decision of innocence or guilt depend upon an array of character witnesses, or a lack of it. A single character witness may be more of an asset to the defense than several unconvincing or evasive witnesses as to the basic facts in issue. Ten witnesses of unquestioned standing were emphatic about the good character of the defendant in the Kelly case. Similarly, eight witnesses of unquestioned standing testified as to the character of the defendant in this case. But

character evidence alone is not determinative of the guilt or innocence of an accused. At most it can be the basis for an inference by the trier of the facts that a person possessing good character would, in all probability and based on the experience of human relations, not be guilty of the crime charged.

The United States Court of Appeals said in the Kelly opinion that "it is less than likely that a man who would invite a stranger * * * to participate in a perverted sex act could present credible witnesses of his good character in respects relevant to that issue." Therefore another part of the evidence in this case must be considered for its contribution to the whole factual picture. That is Costanzo's testimony that defendant said he was "kind of new" at perverted acts, also Klopfer's testimony that defendant admitted having made such statement. If this were true (and the trial judge was certainly not required to disbelieve it), it can reasonably be said to have the effect, as the Government says, of "reducing to a minimum the opportunities of the character witnesses to correctly evaluate the subjective character and psychological personality of appellant."

■ Our study of the record satisfies us that the trial judge did not misapply the Kelly principles in making his decision. We cannot say that the judge did not use great caution in receiving and considering the testimony of Costanzo. His conclusion from the testimony was that Costanzo was convincing and the defendant far from convincing and that " * * * giving to the defendant's testimony and the testimony of his witnesses the benefit of every doubt and reasonable inference, it still fails to engender a reasonable doubt in the court's mind as to his guilt." We would not be justified, on the record before us, in overriding that decision.

In view of the testimony recited above (much of it necessarily in euphemistic form), we think that the decision of guilt arrived at after a full trial is in no way out of harmony with the rulings in the Kelly case. Stated otherwise, we cannot on the evidence say "that the judgment is plainly wrong or without evidence to support it", Code 1940, Supp. VII, § 11–772.

Defendant next contends that the court erred in refusing to dismiss the information for failure to charge that the offense was committed in one of the places specifically spelled out in the statute.[3] The information charged that the offense was committed at 16th and H Streets, N. W., in the District of Columbia. The defendant says this is insufficient because he and Costanzo were riding in a private conveyance, and if the words of solicitation were spoken, they were to a guest in defendant's car and not in or upon one of the public places contemplated in the statute. We need not consider whether this requires an acquittal, because the statute also provides that it shall be unlawful to *address* for the purpose of inviting, etc. Defendant was expressly charged in the information with "addressing for the purpose of." He did not deny that he initiated the conversation or that Costanzo was then not in the car but on a public street. We think this is sufficient to bring the case within the statute, since there was evidence to support a finding that defendant addressed Costanzo for one of the purposes forbidden by the statute. There is no merit whatever to defendant's contention that evidence was obtained in violation of the 4th Amendment prohibition against unreasonable search and seizure.

■ Defendant's next contention is that the court erred in refusing to dismiss the information because Costanzo was unable to specifically identify the exact location of the parties at the time the alleged specific words were spoken but he stated that defendant was placed under arrest at 16th and H Streets, N. W. The argument seems to be that there was a variance between the information and the proof. This overlooks the fact that the parties were in a moving vehicle that almost completely circled an area of several blocks. It is very unlikely that the specific instances

3. Code 1940, Supp. VII, § 22–2701, "* * * in or upon any avenue, street, road, highway, open space, alley, public square * * *."

at which precise words in a running conversation were spoken can be recalled with any great degree of accuracy some weeks later. Also since the primary function of an information is to apprise the defendant of the offense with which he is charged,[4] and defendant was arrested at 16th and H Streets, N. W. within a few minutes of the time he first saw Costanzo, it can hardly be argued that defendant was insufficiently apprised of the charge he would be expected to answer.

Other contentions of the defendant are that his guilt was pre-judged by the trial court, that he was not afforded the presumption of innocence, and that the court "failed to afford the defendant the protection he would have been afforded by a properly-instructed jury." These arguments are based on instances wherein the trial judge himself questioned defendant on various points in his testimony. Neither the isolated questions (which did not transcend the judge's discretionary power) nor the record as a whole supports the contention.

Affirmed.

4. Perlich v. District of Columbia, D.C. Mun.App., 90 A.2d 227, and cases there cited.

