Kevin E. ROSE, Appellant,

v.

UNITED STATES, Appellee.

No. 85–111.

District of Columbia Court of Appeals.

Submitted March 18, 1986.
Decided Dec. 4, 1987.*

---

* This opinion was released in typed form prior to printing.

Samuel G. McTyre, Washington, D.C., appointed by the court, was on the brief, for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Saul M. Pilchen, and Patricia A. Riley, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK and ROGERS, Associate Judges and NEBEKER,[**] Associate Judge, Retired.

ROGERS, Associate Judge:

Appellant Rose appeals [1] his conviction of solicitation for lewd and immoral purposes, D.C.Code § 22–2701 (1985 Supp.), on the grounds that the evidence was insufficient and the statute is unconstitutionally vague. We agree the evidence was insufficient, and do not reach the constitutional claim; accordingly, we reverse.

### I

On the afternoon of November 28, 1984, around 4:30 p.m., Rose was standing on a corner at Vermont Avenue and N Street, N.W., a high prostitution area. Rose, who is a male, was wearing a black jacket, black leotards, black "mini-skirt type undergarment or lower garment," a silver belt, and a black wig. From a distance of approximately sixty feet, two Metropolitan Police officers, who were experienced with operations involving the observation and arrest of street prostitutes, observed Rose, who they thought was a female, wave to several male motorists passing through the area. He addressed six or seven male motorists who stopped to talk with him during a period of two or three minutes. The officers saw several of these men shake their heads "no" before leaving the area, and noted the license plate numbers of the cars. The officers also observed Rose wave down the driver of a Cadillac, engage the driver in conversation, enter the car, leave the area and return approximately ten minutes later. They arrested Rose for soliciting for prostitution.

In his defense, Rose presented the testimony of Mary Lisbon, the administrative coordinator of the Zaccheaus Medical Clinic at 1329 N Street, N.W., a free primary health care clinic. Lisbon testified that since 1983 Rose has worked as a volunteer at the clinic, which was less than half a block from the location of his arrest, and that he usually came to work dressed in women's clothing. He normally worked at the clinic's front desk on the night of the week that he was arrested, and was due at work "by at least 6:00 o'clock." Lisbon testified that as a front desk volunteer, Rose spoke to clinic patients and was very outgoing, chatting and gesturing.

### II

When reviewing a claim alleging insufficiency of evidence, we must evaluate the evidence in the light most favorable to the government and give full weight to the factfinder's ability to weigh the evidence, determine the credibility of witnesses, and draw justifiable inferences. *See United States v. Covington,* 459 A.2d 1067, 1070–

---

[**] Judge Nebeker was an Associate Judge of this court at the time of submission. His status changed to Associate Judge, Retired, on September 1, 1987.

1. Decision in this case was postponed until this court, sitting en banc, decided *Ford v. United States,* 533 A.2d 617 (D.C.1987) (*Ford II*).

71 (D.C.1983) (quoting *United States v. Hubbard,* 429 A.2d 1334, 1337–38 (D.C.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981)); *Sousa v. United States,* 400 A.2d 1086, 1043 (D.C.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979); *Byrd v. United States,* 388 A.2d 1225, 1229 (D.C.1978). We do not distinguish between circumstantial and direct evidence and may affirm a conviction based solely on circumstantial evidence. *Ford II, supra* note 1, 533 A.2d at 624; *Ford v. United States,* 498 A.2d 1135, 1137 (D.C.1985) (*Ford I*); *Chaconas v. United States,* 326 A.2d 792, 797 (D.C.1974). Since Rose introduced evidence after the denial of his motion to dismiss at the close of the government's case, we review all of the evidence presented at trial. *Hawthorne v. United States,* 476 A.2d 164, 168 n. 10 (D.C.1984).

D.C.Code § 22–2701 (1985 Supp.) provides:

It shall not be lawful for any person to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons 16 years of age or over in the District of Columbia, for the purpose of prostitution, or any other immoral or lewd purpose, under a penalty of not more than $300 or imprisonment for not more than 90 days, or both. *Inviting, enticing, or persuading, or addressing for the purpose of inviting, enticing, or persuading for the purpose of prostitution includes, but is not limited to, remaining or wandering about a public place and: (1) Repeatedly beckoning to, repeatedly stopping, repeatedly attempting to stop, or repeatedly attempting to engage passersby in conversation; (2) stopping or attempting to stop motor vehicles; or (3) repeatedly interfering with the free passage of other persons; for the purposes of prostitution.*

■ The italicized portion of the statute was added pursuant to an amendment

passed by the Council of the District of Columbia on December 10, 1981, D.C.Law 4–57. The 1985 amendment authorizes conviction of soliciting for prostitution upon proof of a combination of otherwise innocent actions. By its plain terms, the amendment does not apply to soliciting for lewd or immoral purposes. *People's Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc) (the court first looks at the statutory language to see if it is "plain and admits of no more than one meaning") (quoting *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979)). In *Ford II, supra* note 1, 533 A.2d at 623, we pointed out that

[t]he 1981 amendment did not change the elements of the offense proscribed by section 22–2701, nor did it increase or decrease the government's burden of proof. The legislative history makes plain that the Council's purpose was simply "to clarify that the prohibition against soliciting acts of prostitution includes, but is not limited to, the specific enumerated conduct when engaged in for the purpose of prostitution." Council of the District of Columbia, Report of the Committee on the Judiciary, Bill No. 4–184, at 1 (July 22, 1981) (hereinafter "Committee Report").

■ Nothing in the legislative history of the amendment suggests the Council of the District of Columbia intended to lessen the government's burden of proof to convict for solicitation for lewd or immoral purposes. *See* REPORT OF THE COMMITTEE ON THE JUDICIARY, COUNCIL OF THE DISTRICT OF COLUMBIA, Bill No. 4–184, The "Control of Prostitution and Sale of Controlled Substances in Public Places Criminal Control Act of 1981" (July 22, 1981). To the contrary, the Council sought unsuccessfully to abolish the crime of sodomy [2] in the District of Columbia Sexual Assault Reform Act of 1981 (SARA), D.C.Act No. 4–69, 28 D.C.Reg. 3409 (1981).[3]

---

**2.** Soliciting for a lewd or immoral purpose is limited in the District of Columbia to soliciting for sodomy. *Riley v. United States,* 298 A.2d 228, 231 & n. 4 (D.C.1973) (challenge to statute on grounds of unconstitutional vagueness).

**3.** In *Gary v. United States,* 499 A.2d 815, 821 (D.C.1985) (en banc), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1470, 89 L.Ed.2d 725 (1986), the court held that the one-house Congressional veto of enactments by the Council of the District of

It is a fundamental principle of our system of criminal justice that an individual will be punished only for bad conduct, not bad intentions.

> The mere harboring of an evil thought, such as the intent to engage in criminal conduct, does not constitute a crime; a crime is committed only if the evil thinker becomes an evil doer.

1 WHARTON'S CRIMINAL LAW § 25, at 115 (C. Torcia 14th ed. 1978) (citations omitted).[4] Under the solicitation statute, it is the conduct of "inviting, enticing, or persuading," or addressing for that purpose, that is prohibited. In addition, such otherwise innocent conduct becomes unlawful only when it is accompanied by the criminal state of mind that it be done for an "immoral or lewd purpose." It is the simultaneous existence of the named conduct and the related criminal intent which constitutes the offense of solicitation for an immoral or lewd purpose. If either the actus reus—the unlawful conduct—or the mens rea—the criminal intent—is missing at the time of the alleged offense, there can be no conviction. "Reducing it to its simplest terms, a crime consists in the concurrence of prohibited conduct and a culpable mental state." *Id.* § 27, at 135 (footnote omitted).

Upon review of the record, we hold that there was insufficient evidence to support Rose's conviction. Rose was observed in an area known for prostitution. He was dressed in female clothes, and according to the testimony of the police officers, Rose appeared to be a female prostitute. He was briefly observed waving and speaking to male motorists, who shook their heads in a negative response before leaving the area. The officers did not overhear any of the conversations. Rose was observed to wave down a male motorist, drive off with him, and return to the same area after several minutes. Being in the "wrong" place, wearing the "wrong" clothing, and acting in a manner which might be consistent with a desire to engage in sexual activity cannot form the basis for a conviction for solicitation for lewd and immoral purposes. *See Ford II, supra* note 1, 533 A.2d at 625–626 (evidence establishing, at most, that appellants looked and acted like prostitutes held insufficient to sustain conviction for solicitation for prostitution); *Rittenour v. District of Columbia,* 163 A.2d 558, 560 (D.C.1960) (police officers' suspicions that appellant was a homosexual cannot be basis for conviction of committing a lewd, obscene or indecent act under D.C.Code § 22–1112(a) (1951); homosexuality not a crime); *Ricks v. District of Columbia,* 134 U.S.App.D.C. 201, 214, 414 F.2d 1097, 1110 (1968) (vagrancy statute held unconstitutionally vague; "a citizen cannot be punished merely for being 'a suspicious person' "). Hence, the conduct of Rose, as established at trial, was not that which is prohibited by the statute.

During the argument on Rose's motion to dismiss at the close of the government's case, the trial judge reviewed the 1985 amendment, and initially noted that the officers' observation of Rose for two or three minutes during which time Rose beckoned to passing motorists, "would not be sufficient" to sustain the conviction.[5] However, the judge commented that when the beckoning for two or three minutes was combined with Rose's attire, the area where he was observed, and the time of day, there would be sufficient evidence to find guilt

---

Columbia, pursuant to D.C. Code § 1–233(c)(2) (1981), was unconstitutional. Our holding was prospective, however, and hence the veto by the U.S. House of Representatives of SARA remained effective. *Gary,* 499 A.2d at 833.

**4.** This is not a doctrine of recent vintage. As stated by Blackstone:

> For, though, *in foro conscientiae,* a fixed design or will to do an unlawful act, is almost as heinous as the commission of it, yet, as no temporal tribunal can search the heart, or fathom the intentions of the mind, otherwise than as they were demonstrated by outward actions, it therefore cannot punish for what it cannot know.

4 W. BLACKSTONE, COMMENTARIES 21.

**5.** Since the objects of Rose's beckoning were motorists, and one of the police officers testified they were over age sixteen, the government met its burden of proof on this element of the offense. *Cf. Graves v. United States,* 515 A.2d 1136, 1145 (D.C.1986) (elements of offense of soliciting for prostitution).

beyond a reasonable doubt.[6] Nothing in the record indicates that the judge focused on the fact that the Council had modified the statutory requirements for proof of soliciting for prostitution only, while leaving intact the prior common law requirements for proof of soliciting for lewd and immoral purposes.

We agree with the trial judge that the beckoning for two or three minutes would not, in and of itself, sustain a conviction. Beckoning alone does not permit the trier of fact to find the necessary purpose beyond a reasonable doubt. *See Ford II, supra* note 1, 533 A.2d at 625; *Ford I, supra,* 498 A.2d at 1138. Nor can the conviction be sustained when the beckoning is taken together with Rose's attire and the area where he was observed. The female attire worn by Rose when he was arrested is immaterial to whether he committed the act for which he was convicted. While such attire is out of the ordinary, we cannot say dressing in female attire may be considered indicative of intent to invite for immoral or lewd purposes.[7] In regard to the area where Rose was observed, one officer testified that the location was one of the city's high prostitution areas, but Rose was not convicted of solicitation for prostitution. In the absence of evidence in the record to suggest that the area was plagued by solicitations for immoral or lewd purposes, the area cannot be a factor which supports a finding of guilt. *See Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) (walking through neighborhood with high incidence of drug traffic does not provide police with reasonable suspicion to stop individual). As to the time of day, Rose presented an undisputed, corroborated explanation for his presence in the area at that time.

The conduct required to establish the offense of inviting for an immoral or lewd purpose invariably includes otherwise innocent behavior; it becomes unlawful only because it betrays an unmistakable intent to invite for a lewd or immoral purpose. Thus, a conviction must rest on the accused's unambiguous manifestation of the intent to engage in an immoral or lewd activity. Otherwise, no citizen could hail a cab, wave to a friend, talk to a stranger, wait for a date on a street corner, or take an aimless stroll, and shortly return to the scene, without fear of conviction under § 22–2701. There can be no finding of guilt under the statute unless a reasonable mind could conclude beyond a reasonable doubt that the conduct proved at trial constituted an open invitation to engage in a lewd or immoral activity. The unremarkable behavior of Rose up until the time he was arrested does not permit that interpretation.

Historically this court has relied on proof of direct evidence of a conversation which includes a reference by the defendant to proscribed acts in order to sustain a conviction for soliciting for lewd and immoral purposes. *See Riley, supra* note 2, 298 A.2d at 233; *Willis v. United States,* 198 A.2d 751 (D.C.1964); *Berneau v. United States,* 188 A.2d 301, 302 (D.C.1963); *Alexander v. United States,* 187 A.2d 901 (D.C. 1963); *Reed v. United States,* 93 A.2d 568, 569 (D.C.1953); *Bicksler v. United States,* 90 A.2d 233, 234 (D.C.1952); *King v. United States,* 90 A.2d 229, 230 (D.C.1952); *Brenke v. United States,* 78 A.2d 677 (D.C. 1951). *See also Kelly v. United States,* 90 U.S.App.D.C. 125, 194 F.2d 150 (1952). It was thought that without such direct evidence, the trier of fact cannot reasonably infer that an unlawful solicitation has taken place. However, in *Ford I, supra,* 498 A.2d at 1138, the court held the absence of

6. The trial judge ruled:
   in that period [of two to three minutes, Rose] was observed apparently beckoning to or looking into several passing cars, which alone, again would not be sufficient. But taking the whole circumstances here of everything that was observed and what Mr. Rose was alleged to have been seen to do, and the garb, the area, the time, the gestures; all tak-

en together, it seems to me, is sufficient for this Court to find as I do find, beyond a reasonable doubt, that he was guilty of soliciting for lewd and immoral purposes.

7. The government cites no authority, and we have found none, supporting the proposition that men who solicit for immoral or lewd purposes wear female apparel.

direct proof that a defendant charged with soliciting for prostitution spoke words of solicitation is not fatal to the government's case. *Id.* at 1137.[8] *See generally Dinkins v. United States,* 374 A.2d 292 (D.C.1977) (en banc). While the absence of proof of a conversation may not necessarily be fatal, it may weigh heavily against conviction because of the nature of the crime charged. *See Ford II, supra* note 1, 533 A.2d at 627 (some proof of communication necessary because illegality lies in communication itself, not in conduct leading up to it). The present case provides a classic illustration why such evidence is necessary.

■■■ Without direct evidence of an invitation by Rose to commit sodomy, his behavior is susceptible to several explanations, and is not, as the government argues, consistent only with soliciting for immoral or lewd purposes. Although Rose was observed waving down male motorists in an area known for prostitution while dressed in women's clothing, a health clinic coordinator testified, without contradiction, regarding an explanation for Rose's appearance in the area at that time and dressed as he was. Since the police did not contact the persons beckoned, there was no evidence those persons were previously unknown to Rose, nor any evidence about the nature of Rose's conversations with them, and other than Rose's uncontroverted testimony, no evidence of his intent in waving to male motorists. Even if the trier-of-fact could reasonably infer from the government's evidence that *some* sort of sexual activity had occurred, it by no means follows that the activity included sodomy,[9] and thus a conviction of soliciting for lewd and immoral purposes would be based on speculation.[10]

By our opinion we do not, as the dissent suggests, seek to require the government to negate all reasonable hypotheses of innocence. Rather, we hold only that before a defendant may be convicted of solicitation for immoral or lewd purposes, the government must present evidence from which a reasonable trier-of-fact could conclude beyond a reasonable doubt that the defendant had engaged in the prohibited activity *for the purpose of committing sodomy.* It is this threshhold which the government failed to meet here, in contrast to the situation in the cases consolidated in *Ford II,* where the quantum of evidence was far greater yet insufficient.[11] There was no evidence that Rose's purpose in waving down the passing motorists was to commit a prohibited act. Without such evidence the government contends that guilt

**8.** The court in *Ford I* recognized that the legislative history of the 1985 amendment indicates its purpose was to clarify the conduct which constitutes solicitation for prostitution, and not to change the statutory requirement of proof of intent to commit an unlawful act. 498 A.2d at 1138; *see also Ford II, supra* note 1, 533 A.2d at 624.

**9.** Contrary to the suggestion in the dissent, the nature of the sexual conduct is far from being "too obvious to debate." As noted, solicitation for immoral or lewd purposes is limited to solicitation for sodomy. *See Riley, supra,* note 2, 298 A.2d at 231. Sodomy, as defined by D.C. Code § 22–3502 (1981), embraces only limited and clearly enumerated forms of sexual activity.

**10.** This case is similar to *Williams v. United States,* 71 App.D.C. 377, 110 F.2d 554 (1940). There, in a prosecution for solicitation for prostitution, the U.S. Court of Appeals for the D.C. Circuit observed that the government's evidence was that appellant approached a police officer and "asked him if he wanted a date" and that the officer answered yes. Appellant then got into the officer's car and asked if the officer wanted to drive and talk. The court stated that

on the basis of this evidence, appellant's purpose was at best ambiguous and that there was no evidence that the proposed "date" included prostitution. Likewise, in the instant case, the government has adduced no evidence that would indicate that Rose's waving down the motorists included an invitation to commit an immoral or lewd act.

**11.** The dissent conveniently ignores this difference. The explanation for the absence of evidence against Rose may well be explained by the view of the Metropolitan Police Department of what was required for a conviction after the 1985 amendment to the solicitation statute. *Ford II, supra* note 1, 533 A.2d at 623–624 (referring to erroneous instructions issued by the department on the effect of the amendment). The government has failed to meet its burden of proof against Rose since the illegality with which he is charged lies in the communication itself and not in the conduct leading up to it, *id.* at 627, notwithstanding any suspicions which the government's evidence may raise about Rose.

may be inferred from a combination of innocent circumstances—such as Rose's presence in a certain area at a certain time of day—for which Rose has provided a credible and corroborated explanation. The threshold for convictions for soliciting for lewd and immoral purposes has long been a concern in this jurisdiction, *see Kelly, supra,* 90 U.S.App.D.C. at 129, 194 F.2d at 154, precisely because of the ease with which the accusation may be made under innocent circumstances. *Id.* at 128, 194 F.2d at 153. Although the government is permitted to prove its case by circumstantial evidence, "inferential proof of an ultimate fact may not be based upon a mere possibility, speculation, or conjecture." *Ford II, supra* note 1, 533 A.2d at 625 (quoting *Jackson v. District of Columbia,* 180 A.2d 885, 888 (D.C.1962)).

Accordingly, because the government failed to provide sufficient evidence of Rose's purpose, the judgment of conviction must be reversed.

*So ordered.*

NEBEKER, Associate Judge, Retired, dissenting:

In *Ford v. United States,* 533 A.2d 617 (D.C.1987) (en banc) (*Ford II*), a five member majority held that "[b]ecause there was no evidence in any of the cases 'that a commercial venture was contemplated when the sexual availability was made apparent,' all five convictions must be reversed." *Id.* at 625 (citation omitted). In short, we held the evidence insufficient as to the fee element of soliciting for the purpose of prostitution, *i.e.,* sex for pay. The majority in this case subscribed to the opinion and holding in *Ford, supra,* including the acknowledgment that those women "looked and ... acted like prostitutes" and that their "sexual availability was made apparent." *Id.* Now, after we have deferred decision in this case to await the *Ford II* decision, the majority here amazingly ignores what they, as members of the en banc court, readily conceded—that the conduct common to all these cases permits an inference that "sexual availability was made apparent."

The majority here is quite inconsistent—impermissibly so I suggest—with the *Ford II* holding when it concludes "[e]ven if the trier-of-fact could reasonably infer ... that *some* sort of sexual activity had occurred [the same concession made in *Ford II*], it by no means follows that the activity included sodomy...." *Ante* at 623 (emphasis in original) (footnote omitted). I ask: What else could a female impersonator have contemplated when he solicits another male for what is conceded to be "some sort of sexual activity"?

Nor do I understand other aspects of the majority opinion. It counsels "a conviction must rest on the accused's unambiguous manifestation of intent to engage in an immoral or lewd activity." *Ante* at 622. Circumstantial evidence need not be "unambiguous" in the sense that it excludes all reasonable hypotheses of innocence. *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954); *Chaconas v. United States,* 326 A.2d 792, 798 (D.C.1974). Thus, the majority is wrong in exacting (without citation of authority) such a high standard of proof. The statute prohibits addressing etc. for the purpose of inviting etc. for any immoral or lewd purpose. Awkward as it is, the statute prohibits actions for certain purposes, or as the majority says, "bad intentions." *Ante* at 621. We do punish for bad intentions when coupled with "bad conduct." *Id.* To view the conduct in this case as innocent, as do my two colleagues, hardly befits a court charged with knowledge of all aspects of human behavior.

In my view, we are required to follow the en banc pronouncement in *Ford II* that sexual availability may be inferred from the conduct of record. The nature of the sexual conduct is too obvious to debate when it turns out to be one man addressing another under these circumstances. Since evidence of a fee is not required in this case, *Ford II* says the conviction here should be affirmed.

Accordingly, I dissent.