UNITED STATES, Appellant,

v.

Martha HUBBARD, Appellee.

No. 80–435.

District of Columbia Court of Appeals.

Argued Jan. 22, 1981.

Decided March 27, 1981.

Keith A. O'Donnell, Asst. U. S. Atty.,
Washington, D. C., with whom Charles F. C.

Ruff, U. S. Atty., John A. Terry and Deborah A. Robinson, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

Nicholas M. W. Di Bella, Landover, Md., appointed by the court, for appellee.

Before KERN, MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

The government appeals from a post-verdict judgment of acquittal granted in favor of appellee vacating a jury finding of guilty of possession of narcotics in violation of D.C. Code 1973, § 33–402. The court's ruling was founded on the premise that the evidence was insufficient to establish appellee's dominion and control over the heroin seized in this case. The government seeks reversal contending that the court erred in its ruling. We agree. Accordingly, we reverse the court's grant of appellee's motion for judgment of acquittal and order that the jury verdict be reinstated.

I

In establishing its case of possession of narcotics against appellee and her codefendant, Willie Yelverton, the government presented the testimony of several Metropolitan Police Officers. On November 8, 1979, at about 3:00 a. m., Officers Francis and Starliper were engaged in narcotics surveillance in the 1300 block of U Street, N.W. They observed, from a distance of 50 to 75 feet, with the aid of binoculars, what appeared to be two narcotic transactions. The first involved an unknown man who approached appellee. After a brief conversation, appellee handed a small object to the man and, in turn, received a sum of money. Appellee subsequently walked approximately ten feet to the codefendant and gave him the money she had just received. She then returned to her original location.

Several minutes later, appellee was approached by an unidentified woman. The two engaged in a brief conversation, and then joined Yelverton, who was standing nearby. All three parties were involved in

yet a second discussion. Yelverton left the women, walking a few feet to some stairs in front of 1338 U Street. He picked up a white paper bag, removed a small object from it, and returned the bag to its original position at the bottom of the stairs. Yelverton then walked back to appellee and the other woman; he gave the small object to the unknown female and in return received some money. Although appellee was not involved in the exchange of items, she was present when the second transaction took place.

At that point, a description of both appellee and her codefendant, as well as the location of the white paper bag from which Yelverton retrieved the small object, was transmitted by Officer Francis to Officer Falkosky and his partner, Officer Alman. Shortly thereafter, appellee and Yelverton were placed under arrest in front of 1338 U Street. Officer Falkosky also recovered the white paper bag from the bottom of the stairs of that building. It contained three smaller glassine bags of a substance that was later determined to be heroin.

At trial appellee denied both the possession and sale of narcotics. She also stated that she had not assisted anyone else in the sale of narcotics. She presented three other witnesses who testified that they were in the 1300 block of U Street at the time in question, but did not see appellee engage in any narcotic transactions.

Appellee was found guilty as charged by a jury. She subsequently filed a motion for judgment of acquittal pursuant to Super.Ct. Cr.R. 29(c).[1] In granting appellee's motion, the court vacated the jury verdict, from which the government appeals pursuant to D.C.Code 1973, § 11–721(a)(1).

On appeal, we are confronted with two issues: (1) whether this court is barred from reviewing the action taken by the lower court with respect to the post-verdict motion for judgment of acquittal because of the possibility of placing appellee in double jeopardy, and (2) whether the court erred in granting appellee's motion given the circumstances of this case. Appellee contends that *any* review of the lower court's ruling granting her motion for judgment of acquittal would violate the double jeopardy clause of the Fifth Amendment.[2] We disagree.

## II

The fundamental principle underlying the double jeopardy clause is that a defendant should not be subjected to multiple prosecutions and punishments for the same offense after once having been placed in jeopardy. *United States v. Wilson*, 420 U.S. 332, 339, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975); *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). *See also Sanabria v. United States*, 437 U.S. 54, 63, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43 (1978); *United States v. Scott*, 437 U.S. 82, 92, 96, 98 S.Ct. 2187, 2194, 2196, 57 L.Ed.2d 65 (1978). Hence, in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court stated that the Fifth Amendment "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Id.* at 717, 89 S.Ct. at 2076 (footnotes omitted). *Accord, United States v. Wilson, supra,* 420 U.S. at 343, 95 S.Ct. at 1021. However, it has also been recognized by the Court that the double jeopardy clause does not preclude appellate review in cases where the defendant would not be subjected to either a second trial or multi-

1. Super.Ct.Cr.R. 29(c) provides in pertinent part:

 MOTION AFTER DISCHARGE OF JURY. If the jury returns a verdict of guilty ... a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal.

2. U.S.Const. Amend. V states in part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb ...."

ple punishment. *United States v. DiFrancesco*, —— U.S. ——, ——, 101 S.Ct. 426, 434, 66 L.Ed.2d 328 (1980) ("Double Jeopardy Clause does not bar a Government appeal from a ruling in favor of the defendant after a guilty verdict has been entered by the trier of fact.") (citations omitted); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569–70, 97 S.Ct. 1349, 1353–54, 51 L.Ed.2d 642 (1977) ("where a Government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended."); *United States v. Wilson, supra*, 420 U.S. at 344–45, 95 S.Ct. at 1022 (where "reversal on appeal would merely reinstate the jury's verdict, review of such an order does not offend the policy against multiple prosecution.").

In *United States v. Wilson, supra*, respondent Wilson was tried and convicted by a jury for converting union funds to his personal use. The trial court, however, in ruling on a post-verdict motion, dismissed the indictment on the ground that defendant had been prejudiced as a result of the delay between investigation of the alleged offense and the indictment of defendant. Rejecting respondent's contention that he would twice be put in jeopardy if the government was allowed to appeal the lower court's ruling, the Court held:

> [A] defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact. [*Id.* at 345, 95 S.Ct. at 1022 (footnote omitted).]
>
> \* \* \* \* \* \*
>
> Correction of an error of law [committed by a trial judge in ruling on a post-verdict motion which has the effect of vacating a jury finding of guilt] . . . would not grant the prosecutor a new trial or subject the defendant to the harassment traditionally associated with multiple prosecutions. We therefore conclude that when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause. [*Id.* at 352–53, 95 S.Ct. at 1026.]

*See also United States v. Martin Linen Supply Co., supra* 430 U.S., at 570, 97 S.Ct., at 1354.

■ Thus, we conclude that the double jeopardy clause neither prevents the government from appealing the court's ruling on appellee's post-verdict motion for judgment of acquittal nor precludes this court from reviewing that ruling since by so doing appellee would not be subjected to a second prosecution for the same offense. For even if we conclude that as a matter of law the court erred in granting appellee's motion, at most we would only instruct the court to reinstate the jury verdict of guilty. As previously stated, the reinstatement of a jury finding of guilt under these circumstances does not violate the Fifth Amendment.

### III

■ On the merits, the government contends that in vacating the verdict of the triers of fact, the court, as a matter of law, committed reversible error when it ruled that the evidence was insufficient to establish appellee's guilt beyond a reasonable doubt. With respect to the standard of review in evaluating the action taken by the trial court in ruling on the sufficiency of the evidence, the law in this jurisdiction is well-settled; Where the evidence presented at trial is such that a reasonable person could find guilt beyond a reasonable doubt, a motion for judgment of acquittal should not be granted. *Smith v. United States*, D.C.App., 389 A.2d 1356, 1358 n.5, *cert. denied sub nom. Washington v. United States*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 707 (1978); *Franey v. United States*, D.C.App., 382 A.2d 1019, 1022 (1978); *accord, Tucker v. United States*, D.C.App., 421 A.2d 32, 34 (1980); *Morrison v. United States*, D.C.App., 417 A.2d 409, 412 (1980); *Montgomery v. United States*, D.C.App., 384 A.2d 655, 658 (1978); *Singletary v. United States*, D.C.App., 383 A.2d 1064, 1069 n.4 (1978). "In considering the motion, the evidence must be viewed in the light most favorable to the government, 'giving full play to the right of the jury to

determine credibility, weigh the evidence, and draw justifiable inferences of fact.'" *Singletary v. United States, supra* at 1069 n.4 (quoting *Anderson v. United States,* D.C.App., 364 A.2d 143, 145 (1976)); *Morrison v. United States, supra* at 412; *Franey v. United States, supra* at 1022. On appeal, we must also review the evidence on the basis of these same standards. *Morrison v. United States, supra* at 412; *Smith v. United States, supra* at 1358 n.5; *Byrd v. United States,* D.C.App., 388 A.2d 1225, 1229 (1978); *Franey v. United States, supra* at 1022–23. "In applying these standards, no distinction is made between direct and circumstantial evidence." *Franey v. United States, supra* at 1023; *Byrd v. United States, supra* at 1229; *Calhoun v. United States,* D.C.App., 369 A.2d 605, 607. The same standards apply regardless of whether the motion for judgment of acquittal was made at trial (*see* Super.Ct.Cr.R. 29(a)) or after a verdict has been returned by a jury (*see* Super.Ct.Cr.R. 29(c)). *United States v. Austin,* 585 F.2d 1271, 1273 (5th Cir. 1978).

## IV

 At trial, the government presented its case against appellee on alternative theories of actual and constructive possession. Actual possession has been defined as the ability of a person to knowingly exercise direct physical custody or control over the property in question. *See United States v. Spears,* 145 U.S.App.D.C. 284, 293, 449 F.2d 946, 955 (1971); *Spencer v. United States,* 73 U.S.App.D.C. 98, 99, 116 F.2d 801, 802 (1940). Constructive possession exists where a person is knowingly in a position or has the right to exercise dominion and control over the item. *Stewart v. United States,* D.C.App., 395 A.2d 3, 6 (1978); *United States v. Staten,* 189 U.S.App.D.C. 100, 105, 581 F.2d 878, 883 (1978); *United States v. Bethea,* 143 U.S.App.D.C. 68, 71, 442 F.2d 790, 793 (1971). Proof of possession can be established by either direct or circumstantial evidence. *Id.*

 Although the jury may have concluded that appellee did not have actual possession of the heroin retrieved from the white paper bag, it could have reasonably found that she was nevertheless in a position to knowingly exercise dominion and control over it. For as the court noted in *Staten,* "the critical inquiry for judges is whether the factfinder can reasonably conclude from the proof that the accused likely had some appreciable ability to guide the destiny of the drug." 189 U.S.App.D.C. at 105, 581 F.2d at 883 (footnote omitted). Moreover, while an accused's mere presence at the scene of the crime, his proximity to the drugs or his association with one in possession do not in themselves substantiate a finding of constructive possession, nevertheless, "presence, proximity or association may establish a prima facie case of drug-possession when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *Id.* at 107, 581 F.2d at 885.

Appellee was observed by Officers Francis and Starliper engaging, either directly or indirectly, in what appeared to be two narcotic transactions. These transactions took place in an area known by the officers to have a high incidence of narcotic related activity. *See generally United States v. Smith,* D.C.App., 293 A.2d 856 (1972). In the first, appellee handed a small object to an unknown man and received, in exchange, a sum of money, which she gave to her codefendant. During the second, appellee escorted an unidentified woman to Yelverton; the three conversed briefly, and Yelverton then walked several feet away from the women to retrieve a small object from a white paper bag. He then returned, handed the object to the unknown woman, who in turn paid for the item with money. The white paper bag was subsequently found to contain several packets of heroin. Both officers, having been qualified as expert witnesses, testified that in their opinion a narcotic sale had taken place in both instances and that appellee and Yelverton were working together. Given this evidence, the jury could reasonably conclude that appellee's conduct demonstrated her ability to "guide the destiny" of the contents of the white paper bag, thus establishing constructive possession. Therefore, we find that the court erred in granting appellee's post-verdict motion for judgment of acquittal.

*Reversed and remanded with instructions to reinstate the verdict.*