UNITED STATES, Appellant,

v.

**William H. COVINGTON, Appellee.**

**William H. COVINGTON, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**Nos. 81–1508, 82–141.**

District of Columbia Court of Appeals.

Argued Feb. 16, 1983.

Decided May 5, 1983.

Joseph Michael Hannon, Jr., Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellant in No. 81–1508.

Helen Pitts Miller, Washington, D.C., appointed by the court, for William H. Covington.

Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee in No. 82–141.

Before MACK and PRYOR, Associate Judges, and KELLY,* Associate Judge, Retired.

KELLY, Associate Judge, Retired:

Following Covington's conviction for possession of implements of crime, *i.e.,* narcotics paraphernalia, D.C.Code § 22–3601 (1981),[1] and reckless driving, D.C.Code § 40–712(b) (1981), the trial court granted his post-verdict motion for judgment of acquittal on the possession charge and vacated the jury's verdict on that count.[2] The United States appeals.[3] We conclude that,

---

* Judge Kelly was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on March 31, 1983.

1. This provision was repealed by D.C.Law 4–29, § 604(a)(2) (August 5, 1981) and replaced by § 410 of that Act (codified as D.C.Code § 33–550), Possession of Drug Paraphernalia. Subsequent legislation, however, purported to amend the language of § 22–3601 without reference to the prior repeal of that provision. *See* D.C.Law 4–52, § 3(g) (November 17, 1981). Interpreting the two acts in harmony, we conclude that the Council intended in D.C.Law 4–29 to repeal § 22–3601 solely as it applied to narcotics paraphernalia; and to substitute therefor § 33–550, a specific narcotics paraphernalia possession provision.

Notwithstanding this legislative anomaly, the Council did provide in § 601 of D.C.Law 4–29 (codified as § 33–561), Pending Prosecutions, that prosecution under laws repealed by § 604 is not thereby affected or abated. As to sentencing, if the offense prosecuted is similar to an offense set forth in the new law, the penalties of the new law will apply if less than those applicable under the old law.

In this case, appellee's prosecution under § 22–3601 remains unaffected by D.C.Law 4–29. Our decision to reverse and remand for reinstatement of the jury's verdict, however, places the case within the sentencing guidelines of § 601 of that law (D.C.Code § 33–561); the penalties prescribed by D.C.Code § 22–3601 are greater than those prescribed by D.C.Code § 33–550. Accordingly, pursuant to D.C.Law 4–29, § 601 (D.C.Code § 33–561), the trial court in sentencing appellee shall adhere to the prescription of penalties found in § 33–550.

2. The jury acquitted appellee of carrying a pistol without a license. D.C.Code § 22–3204 (1981). After a bench trial, appellee was also acquitted of failing to register a firearm, D.C. Code §§ 6–2311(a), –2376 (1981), and unauthorized possession of ammunition, D.C.Code §§ 6–2361, –2376 (1981).

3. *See United States v. Hubbard,* 429 A.2d 1334, 1336–37 (D.C.) (double jeopardy clause does not prevent the government from appealing the post-verdict entry of a judgment of acquittal nor preclude appellate review), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981); *accord United States v. DiFrancesco,* 449 U.S. 117, 130, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980); *United States v. Singleton,* 702 F.2d 1159 (D.C.Cir.1983).

upon the evidence presented in the government's case-in-chief alone, the jury had a sufficient basis to find beyond a reasonable doubt that appellee constructively possessed the implements in question. Accordingly, we reverse the entry of judgment of acquittal and remand for reinstatement of the jury's verdict of guilty.

I

On the afternoon of March 30, 1981, Donald Gossage, a Metropolitan Police Officer, observed an automobile leaving the parking lot of a liquor store located near Third & H Streets, N.E. Appellee was driving. Two passengers were seated in the car—one in the front seat and the other on the rear passenger side. A fourth man hung to the outside of the car by the driver's window.

The automobile swerved up Third Street until the man holding to the outside of the car fell off. The man jumped up and yelled to Officer Gossage to "get that car." Responding to Officer Gossage's pursuit in a police squad car, appellee quickly accelerated away. During the chase, the two passengers in appellee's vehicle repeatedly turned to look at the pursuing cruiser.

After running three stop signs at high speed, appellee sharply braked the car. The rear seat passenger rolled out from the passenger side and fled. He was never apprehended. Appellee again accelerated the car, running a stop sign and then a red light. He braked the car sharply for a second time, whereupon the front seat passenger alighted from the car and fled, successfully avoiding the police.

Appellee continued his flight alone, driving at high speeds estimated by Officer Gossage to be between twenty-five and fifty miles per hour; running four more stop signs and two red lights; exceeding a speed of forty miles per hour in a school zone; and twice traveling the wrong way on one-way streets. Unable to negotiate a turn, he ultimately came to a halt after colliding with a fire hydrant. Immediately, appellee jumped from the automobile and told Officer Gossage that "everything's all right" and that he would cooperate.

A second Metropolitan Police Officer who arrived on the scene spotted a loaded .45 caliber pistol on the middle of the rear seat, the muzzle partially covered by newspaper. A search of the vehicle produced three syringes, two with needles, and three glassine packets containing a white substance. Subsequent forensic testing indicated that the packets contained traces of heroin. Analysis of the syringes proved negative. The three syringes and three packets were all found on the front seat; the syringes were scattered across the middle and the packets were crumpled down at the back crease of the seat, almost under where appellee was seated while driving.

The above facts were introduced during the government's case-in-chief. In addition, an expert witness in the illicit trafficking, use and packaging of heroin identified the three glassine envelopes as the type used to package heroin for sale and the syringe as the type used to inject heroin. Several of appellee's statements also were introduced. According to Officer Gossage, while being arrested, appellee volunteered that "the guy in the car had pulled a gun on him and that's why he was fleeing." Appellee later denied knowing from where the gun came. He also told police that the

Appellee Covington's separate appeal of his conviction for reckless driving was consolidated with this proceeding by order of this court dated March 23, 1982. With regard to the sole claim of insufficiency of the evidence raised in that appeal, we note that "[o]rdinarily, appellate review of the sufficiency of the evidence is barred where, as here, the motion for judgment of acquittal was not renewed after the close of all the evidence." *Robinson v. United States,* 357 A.2d 412, 415 n. 2 (D.C.1976). At the close of all the evidence, appellee renewed his motion for judgment of acquittal as to the counts of carrying a pistol without a license and possession of the implements of a crime, and failed to renew the motion as to the count of reckless driving. Accordingly, appellee is barred from appealing his conviction on the grounds of insufficient evidence. After reviewing the record nonetheless, we conclude that that claim, even if appealable, would be meritless.

owner of the car was Joseph Young who had told appellee that he was going to rob a liquor store in far Northeast.

Following the close of the government's case, the trial court denied appellee's motion for a judgment of acquittal on all counts. Appellee then testified in his own defense.[4] According to appellee, he was moving the automobile as a favor to the owner, Joseph Young, the front seat passenger. Upon Young's request, they picked up the rear seat passenger, James Dison, and drove him to a liquor store at Third & H Streets, N.E. As appellee and Young waited in the automobile, Dison rushed out of the store and into the rear seat, brandished a gun and told appellee to drive off.

Appellee denied seeing anyone hanging off of the car as he pulled away. He also was unaware that Dison, the rear seat passenger, left the automobile during the chase; he did recall that Young exited at some point. Appellee further denied knowledge of the syringes and glassine packets beside him on the front seat. Although he admitted telling Officer Gossage that "the guy in the back had a pistol," he denied stating that Young, the car's owner, had told him of a plan to rob a liquor store. Appellee acknowledged familiarity with the packaging of heroin for distribution and the manner in which heroin is injected by users, and admitted that the three envelopes found on the front seat were of the type used for such distribution and that the three syringes were of the type normally used for injections.

4. The defense also presented, Larry Piper, a paralegal and investigator, who testified that the vehicle was registered to Joseph Young. Appellee later identified Mr. Young as the front seat passenger and James Dison as the rear seat passenger. Neither Mr. Young nor Mr. Dison testified at trial.

5. In its ruling, the court stated:
    The defendant having duly moved for a judgment of acquittal at the close of the prosecution case, the evidence must be measured as it was when the government rested its case in chief. *United States v. Bethea,*

At the close of all the evidence, appellee's renewed motion for judgment of acquittal was denied. The case was submitted to the jury which returned a verdict of guilty. Thereafter, in a memorandum opinion and order, the court granted appellee's post-verdict motion for judgment of acquittal and vacated the jury's guilty verdict on the implements charge. The court ruled:

Taking the evidence as a whole, however, the Court is of the opinion that the conclusion that Covington possessed the narcotics paraphernalia and had the intent to use them unlawfully, while plausible, is nevertheless so speculative that the jury was without sufficient basis to find constructive possession beyond a reasonable doubt.

## II

The government claims that the trial court, in its post-verdict ruling on the sufficiency of the evidence, improperly excluded consideration of the defendant's incredible testimony which, it argues, provided additional evidence of his guilt. Alternatively, it asserts that the evidence from its case-in-chief alone was sufficient to support beyond a reasonable doubt the jury's verdict of guilty.[5]

With respect to the standard of review in evaluating the action taken by the trial court in ruling on the sufficiency of the evidence, the law in this jurisdiction is well-settled. Where the evidence presented at trial is such that a reasonable person could find guilt beyond a reasonable doubt, a motion for judgment of acquittal should not be granted. "In considering the motion, the evidence must be

143 U.S.App.D.C. 68, 70 n. 4, 442 F.2d 790, 792 n. 4 (1971).
At oral argument, the government conceded that it need not rely on the evidence presented by the defense to support its claim that sufficient evidence was presented to submit the case to the jury. We agree, *see infra,* and limit our holding to the government's alternate claim of error. This is not to say, however, that the court's statement is correct. *See Clark v. United States,* 418 A.2d 1059, 1060 n. 2 (D.C.1980); *Franey v. United States,* 382 A.2d 1019, 1021–22 (D.C.1978).

viewed in the light most favorable to the government, 'giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact.'" On appeal, we must also review the evidence on the basis of these same standards. "In applying these standards, no distinction is made between direct and circumstantial evidence." The same standards apply regardless of whether the motion for judgment of acquittal was made at trial (*see* Super.Ct.Cr.R. 29(a)) or after a verdict has been returned by a jury (*see* Super.Ct.Cr.R. 29(c)).

*United States v. Hubbard, supra,* 429 A.2d at 1337–38 (citations omitted).

The government's case against appellee on the implements charge rested upon a theory of constructive possession; a theory to which the trial court found the evidence insufficient to warrant submission to the jury.[6] "Constructive possession exists where a person is knowingly in a position or has the right to exercise dominion and control over the item." *Id.* at 1338. It may be jointly shared. *United States v. Staten,* 189 U.S.App.D.C. 100, 105, 581 F.2d 878, 883 (1978). To prove constructive possession by appellee, the government was required to establish that the paraphernalia were conveniently accessible to him and that he knew of their presence. *See Tucker v. United States,* 421 A.2d 32, 35 (D.C.1980) (per curiam). Direct proof of knowledge was unnecessary; the jury could infer knowledge from circumstantial evidence. *Id.*

The uncontradicted evidence of the government's case-in-chief demonstrated that the three syringes and three glassine envelopes containing traces of heroin were found in plain view on the front seat of the vehicle—next to and almost underneath where appellee was seated. "[S]uch evidence of proximity was sufficient to permit the jury to infer convenient access . . . ." *Id.* at 35. From the presence of the paraphernalia and drugs in plain view, the jury further could infer appellee's knowledge of their presence. *Id.*

We have held that presence, proximity and association may establish a prima facie case of drug possession when colored by evidence of an on-going criminal operation of which the possession is a part. *See United States v. Hubbard, supra,* 429 A.2d at 1338, citing *United States v. Staten, supra,* 189 U.S.App.D.C. at 107, 581 F.2d at 885. The evidence showed that three men, appellee and two passengers, were seen in an automobile in which later were found three syringes and three packets containing traces of heroin. All of the implements were in plain view on the front seat. Furthermore, in response to a police officer's pursuit, appellee attempted to flee, driving his vehicle in a reckless, dangerous fashion. During his flight, appellee further facilitated the escape of the two passengers by twice braking the vehicle to a near halt, thereby permitting them to bail out and avoid police apprehension.

This latter evidence of appellee's consciousness of guilt is highly significant. It constitutes strongly corroborative circumstantial evidence from which the jury reasonably could infer appellee's association with his two passengers with a common

---

**6.** To convict under Section 22–3601, the government had to prove beyond a reasonable doubt (1) that the implements found with appellee are "usually" or "reasonably may" be employed in the commission of a crime, (2) that appellee possessed such implements, actually or constructively, and (3) that appellee intended to use the implements for a crime. *See McKoy v. United States,* 263 A.2d 645, 649 (D.C.1970) (rejecting claim that statute is unconstitutionally vague). "Narcotics paraphernalia ... are considered implements that are

usually employed in the crime of illegal administration of narcotics." *Id.,* citing *Edelin v. United States,* 227 A.2d 395, 397 (D.C.1967). Moreover, appellee's intent to use the implements for a crime may be inferred from the concurrent presence of narcotics. *See Jones v. United States,* 282 A.2d 561, 563 (D.C.1971) (proof of possession of a syringe containing a liquid with more than traces of heroin suffices to sustain a conviction under D.C.Code § 22–3601 (1967)).

purpose to commit a crime. From the plain view presence of the narcotics paraphernalia the jury reasonably could infer further that the criminal purpose was possession of those implements.[7]

Accordingly, during the government's case, the jury heard sufficient evidence from which it reasonably could conclude appellee's guilt beyond a reasonable doubt.

*Reversed and remanded for reinstatement of the jury's verdict.*

---

**7.** In the factual context of the case before us, the trial court's fear of a speculative verdict was unwarranted. We do not deal here with a charge of possession of the gun which was found on the rear seat of the vehicle where one of the passengers sat. *Compare United States v. Bethea,* 143 U.S.App.D.C. 68, 442 F.2d 790 (1971) (although from the presence of three men in a car in which were found three pistols a jury could infer an active association with a common purpose to commit a crime *involving guns,* a jury finding that appellant, as the front seat passenger, possessed drugs, found behind the rear seat of the vehicle in which he sat and next to a gun which police officers had witnessed the rear seat occupant place, would of necessity be based upon sheer speculation). Rather, appellee was charged with possession of narcotics paraphernalia found in plain view immediate to him on the front seat. The quantity of sets of paraphernalia exactly matched the number of occupants in the car. Furthermore, and perhaps most importantly, appellee's own actions in response to police pursuit bolstered the reasonable inference of an active association of the three men with a criminal purpose, partially or wholly including possession of the narcotics paraphernalia.