Ronald SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 84–1120.

District of Columbia Court of Appeals.

Submitted Feb. 5, 1987.
Decided March 26, 1987.

Charles E. Davidow, Washington, D.C., appointed by this court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and Laura R. Blumenfeld, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before BELSON and TERRY, Associate Judges, and REILLY, Senior Judge.

BELSON, Associate Judge:

Ronald Smith appeals from his conviction for possession with intent to use drug paraphernalia, D.C. Code § 33–603(a) (1986 Supp.), entered after a bench trial. Appellant contends that the evidence adduced at trial was insufficient to support his conviction in three respects. First, he contends that the government failed to prove that he was in "constructive possession" of the drug paraphernalia. Second, appellant argues that the government failed to show that he intended to use the drug paraphernalia for one of the statutorily prohibited purposes. Third, appellant contends that the government failed to allege and prove an essential element of the statutory definition of drug paraphernalia, i.e., that the item was less than fifty years old. Finding no merit in any of these contentions, we affirm appellant's conviction.

The police officers who testified on behalf of the government stated that on September 12, 1983, they entered 1430 W Street, N.W., an apartment building frequented by users of illegal narcotics, to make a regular check of the building. On the second floor, the officers found the door to an apartment unhinged and leaning against the doorframe. They then heard noises emanating from within that apartment. When the officers entered the apartment, they saw three individuals sitting on the floor. The three individuals were later identified as Lynn Hopkins, Otis Banks, and appellant, Ronald Smith. Appellant Smith was not wearing a shirt. On the floor in front of Smith and his companions was an unfolded newspaper, and lying on top of the newspaper were several used syringes, a bottle cap cooker, a small empty plastic packet (later found to contain traces of heroin), a cigarette filter, a piece of tin foil, a cup of warm water, and a tourniquet. One of the syringes had a blood residue in it; the other syringes had a clear liquid residue in them. The bottle cap cooker had a charred bottom and contained a cigarette filter. Hopkins was bleeding from a puncture wound on the back of her left hand.

When the police officers entered the room, Banks jumped up and attempted to throw two objects out of the window. One of the officers recognized the smaller of the two objects as a quarter of heroin (a small quantity in which heroin commonly is sold at retail). A quarter of heroin was later recovered by one of the officers from the window ledge of the apartment. A syringe was found outside the window.

A police detective, who qualified as an expert in drugs and drug use, testified that the items seized by the police could be used to administer heroin. The quarter of heroin was of greater than usual strength, and sufficient for several average doses of heroin. The detective indicated that Drug Enforcement Administration laboratory tests showed no trace of any controlled substance on any of the syringes seized by the police.

▮ In reviewing appellant's claim that the evidence did not suffice to support his conviction, this court must view the evidence in the light most favorable to the government, giving it the benefit of all justifiable inferences legitimately drawn from the evidence. *Hall v. United States*, 454 A.2d 314, 317 (D.C.1982). In evaluating the sufficiency of the evidence, no distinction is made between direct and circumstantial evidence. *Wheeler v. United States*, 494 A.2d 170, 172 (D.C.1985).

Possession of drug paraphernalia may be either actual or constructive. "Constructive possession exists where a person is knowingly in a position or has the right to exercise dominion and control over the item." *United States v. Hubbard*, 429 A.2d 1334, 1338 (D.C.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981). To prove that appellant constructively possessed the paraphernalia, "the government was required to establish that the paraphernalia were conveniently accessible to him and that he knew of their presence." *United States v. Covington*, 459 A.2d 1067, 1071 (D.C.1983). We have previously held that proximity to an illegal substance is not sufficient to support a conviction for constructive possession where the defendant is one of several individuals in the room and the defendant's status is that of a visitor. *Wheeler, supra,* 494 A.2d at 172–73. On the other hand, "[w]e have held that proximity may establish a supportable case of constructive possession of narcotics when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *Id.* at 173.

■ In the instant case, appellant was not, in the usual sense of the word, a "visitor" in the abandoned apartment in which he and the paraphernalia were found. Instead, he had trespassed into an abandoned apartment unit in a building that was frequently used as a "shooting gallery." Under the circumstances, there was sufficient evidence to support the government's theory of constructive possession, especially since the evidence in this case linked appellant with the ongoing criminal use of heroin. *Cf. Curry v. United States*, 520 A.2d 255, 264–66 (D.C.1987) (evidence insufficient to support conviction for constructive possession of unregistered firearm where defendants' relationship to pistol too remote).

The evidence showed that the paraphernalia were close to appellant and in his plain view. Other evidence, such as the warm water, the bleeding puncture wound on Hopkins' left hand, discarded syringes, tourniquet, and ashfilled bottle cap cooker, indicated that appellant and his companions were in the process of shooting heroin when the police arrived. A reasonable inference to be drawn from this evidence is that Hopkins had already received her injection of heroin, and that appellant, who was not wearing a shirt, was about to begin preparation of his own injection from the quarter packet of heroin in the room when the police interrupted his plans.

Thus, given the inferences legitimately drawn from the evidence adduced at trial, we find this evidence sufficient to show that appellant constructively possessed the paraphernalia and that he intended to use them to introduce a controlled substance into a person's body.

Appellant also contends that the government was required to prove that the drug paraphernalia he possessed were less than fifty years old. The government argues that D.C. Code § 33–601 "need be interpreted only as requiring the defendant to raise a genuine issue about ... the age of the implement in order to require the government to prove, by expert testimony or otherwise, that it is less than fifty years old."[1]

The statute that defines the term "drug paraphernalia" excludes from that term "any article that is 50 years of age or older." D.C. Code § 33–601 (1986 Supp.). The structure and purpose of this legislation make it clear that this limitation to the definition of drug paraphernalia is properly read as an exception to criminal liability with respect to which the defendant must bear the burden of raising a genuine issue of fact. The definitional provision lists twelve types of objects, identified by their uses, which are "drug paraphernalia," and contains a noninclusive list of other paraphernalia consisting of many of the objects

---

1. The fact that there is burden-shifting language in D.C. Code § 33–553 (1986 Supp.) and not in D.C. Code § 33–601 (1986 Supp.) indicates that we should not construe § 33–601 as shifting the burden of proof, but it does not carry so far as to lead us to ignore the plain purpose and structure of the statute and to hold that § 33–601 does not even place a burden of production on the defendant.

used for introducing controlled substances into the body. The final sentence of § 33–601 provides that any article fifty years of age or older is not included within the term "drug paraphernalia."[2]

The structure of the act clearly implies that an article used for one of the enumerated unlawful purposes is presumed to be "drug paraphernalia" (this determination being guided by the factors listed in D.C. Code § 33–602 (1986 Supp.)) unless the defendant can show that it falls within the exception. Moreover, to read the statute as appellant suggests would frustrate its statutory purpose of prohibiting possession of any implement designed or marketed for consumption of controlled substances. *See Chairperson David A. Clarke, Committee on the Judiciary, Council of the District of Columbia Report, Comments on Bill*

*4–5, the Drug Paraphernalia Act of 1982,* at 4–5 (April 28, 1982).

We derive support for this interpretation of the statute from *Logan v. United States,* 489 A.2d 485, 492–93 (D.C.1985), in which Logan argued that the government was required to prove in every case prosecuted under D.C. Code § 6–2361 (1981) (possession of ammunition) that the accused lacked a valid registration certificate for any gun of the same gauge or caliber as the ammunition. In rejecting Logan's contentions, we relied on the structure of the statute and the difficult burden that such an interpretation would place on the government. *Id.* at 492–93 & n. 10; *see also Middleton v. United States,* 305 A.2d 259, 261 (D.C.1973) (per curiam) (when defendant interposes affirmative defense,

---

**2.** D.C. Code § 33–601 (1986 Supp.) provides as follows:

For purposes of this chapter, the term:
(1) "Controlled substance" has the same meaning as that provided in § 33–501(4).
(2) "Court" means the Superior Court of the District of Columbia and the District of Columbia Court of Appeals.
(3) "Drug paraphernalia" means:
 (A) Kits or other objects used, intended for use, or designed for use in planting, propagating, cultivating, growing, or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;
 (B) Kits or other objects used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing a controlled substance;
 (C) Isomerization devices or other objects used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance;
 (D) Testing equipment or other objects used, intended for use, or designed for use in identifying or analyzing the strength, effectiveness, or purity of a controlled substance;
 (E) Scales and balances or other objects used, intended for use, or designed for use in weighing or measuring a controlled substance;
 (F) Diluents and adulterants, including, but not limited to: quinine, hydrochloride, mannitol, mannite, dextrose, and lactose, used, intended for use, or designed for use in cutting a controlled substance;
 (G) Separation gins and sifters or other objects used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, cannabis or any other controlled substance;

 (H) Blenders, bowls, containers, spoons, and other mixing devices used, intended for use, or designed for use in compounding a controlled substance;
 (I) Capsules, balloons, envelopes, and other containers used, intended for use, or designed for use in packaging small quantities of a controlled substance;
 (J) Containers and other objects used, intended for use, or designed for use in storing or concealing a controlled substance;
 (K) Hypodermic syringes, needles, and other objects used, intended for use, or designed for use in parenterally injecting a controlled substance into the human body; and
 (L) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing cannabis, cocaine, hashish, hashish oil, or any other controlled substance into the human body, including, but not limited to:
 (i) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;
 (ii) Water pipes;
 (iii) Carburetion tubes and devices;
 (iv) Smoking and carburetion masks;
 (iv) Roach clips;
 (vi) Miniature cocaine spoons and cocaine vials;
 (vii) Chamber pipes;
 (viii) Carburetor pipes;
 (ix) Electric pipes;
 (x) Air-driven pipes;
 (xi) Bongs; and
 (xii) Ice pipes or chillers.
The term "drug paraphernalia" shall not include any article that is 50 years of age or older.

such as exception in statute, defendant bears burden of bringing himself within exception rather than requiring prosecutor to prove its negative).[3]

 Therefore, we hold that any object otherwise shown to fall within the provisions of the Drug Paraphernalia Act will be presumed to be less than fifty years old unless the defendant raises a genuine issue of fact with respect to the age of the object. Where the defendant does meet that burden of production, it will be the government's burden to prove beyond a reasonable doubt that the alleged drug paraphernalia are less than fifty years old. Since appellant introduced no evidence in this case to suggest that the paraphernalia might have been more than fifty years old, he failed to meet his burden of production, and his conviction must be sustained.

*Affirmed.*

---

**3.** We find this case distinguishable from *State v. Segovia*, 93 Idaho 208, 457 P.2d 905 (1969), on which appellant relies. In Idaho, the legislature repealed a statute that placed the burden on the defendant to raise any exceptions to the controlled substances law and replaced it with a statute containing no such burden-shifting provision. 457 P.2d at 907. The Idaho court found that the change in legislative language provided "a strong indication" of the legislature's intention to place the burden to plead and prove that the defendant did not fall within a statutory exception squarely on the government. 457 P.2d 907–08. Although the Drug Paraphernalia Act of 1982 does not contain the express burden-shifting provision found in the preceding chapter, D.C. Code § 33–553(a) (1986 Supp.), the Drug Paraphernalia Act is not a substitute or amendment of the earlier act. Therefore, the absence of a burden-shifting provision in the Drug Paraphernalia Act should not be interpreted to demonstrate the legislature's intent to shift the burden of production for exceptions from the defendant to the government, especially in light of the structure and purposes of the Drug Paraphernalia Act noted above.