Ronald McNULTY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 375, 1994.

Supreme Court of Delaware.

Submitted: March 16, 1995.
Decided: April 5, 1995.

Joseph M. Bernstein, Wilmington, for appellant.

John Williams, Deputy Atty. Gen., Dept. of Justice, Dover, for appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

VEASEY, Chief Justice:

In this appeal we consider the contention of defendant below-appellant Ronald McNulty ("McNulty") that the State failed to produce sufficient evidence to support his con-

victions for Trafficking in Cocaine (the "trafficking offense"),[1] Possession with Intent to Deliver Cocaine (the "possession offense"),[2] Use of a Vehicle for Keeping a Controlled Substance (the "use of vehicle offense"),[3] and Conspiracy Second Degree.[4] For the reasons stated below we: (i) affirm McNulty's convictions for the possession and trafficking offenses; (ii) reverse and remand the use of vehicle offense for entry of a judgment of acquittal; and (iii) remand the case for resentencing.

## I. FACTS

On October 15, 1992, officers from the New Castle County Police Department were conducting surveillance on the residence of McNulty's mother, Charlotte Cooper ("Cooper"), to verify a report that Cooper was selling cocaine. Cooper arranged a transaction by telephone involving the sale of cocaine and designated Tillery as the deliverer. Around 5:00 p.m. that evening, an on-site investigator, Detective Joseph Schofield ("Schofield"), observed McNulty, Cooper, Debra Lewandowski ("Lewandowski"), David Jones ("Jones"), and Marion Tillery ("Tillery") outside Cooper's apartment. Soon thereafter all but Cooper got into Lewandowski's car. Lewandowski occupied the driver's seat, Tillery the front passenger seat, and Jones and McNulty the back seat. They started driving to the site designated for the delivery. McNulty was the only one in the car that could identify the buyer, but all were aware that Tillery was carrying cocaine for the transaction.

Schofield, traveling in an unmarked car, and a marked police unit started following Lewandowski's car as soon as it left Cooper's residence. Schofield observed Jones and McNulty "ducking back and forth, looking back at [him,]" at which time Schofield instructed the patrol unit to stop the vehicle. The unit did so. Tillery fled the scene, escaping after a 30–minute chase. While fleeing the scene, he dropped money and ripped open several bags to dump a white, powdered

---

1. 16 *Del.C.* § 4753A(a)(2)a.

2. *Id.* § 4751.

3. *Id.* § 4755(a)(5).

4. 11 *Del.C.* § 512. McNulty does not challenge this conviction.

substance (later identified to be cocaine) on the street. Schofield and another officer collected the cocaine, which totaled 6.40 grams, but found no other drugs in the car or on McNulty's person.[5]

The police arrested Lewandowski, Jones, and McNulty, and interviewed them at the police station. McNulty told an officer that he knew Tillery had drugs and was supposed to make a delivery, but claimed that he asked to be dropped off before reaching the transaction site.[6]

A jury trial commenced on July 11, 1994, at which the testifying witnesses included Schofield and Lewandowski. McNulty moved for a judgment of acquittal at the end of the State's case as to all counts but the one for conspiracy. The Superior Court denied the motion. McNulty did not present a defense and failed to renew his acquittal motion.[7] On July 13, 1994, the jury found McNulty guilty of all charged offenses. This is McNulty's appeal from the Superior Court's denial of his acquittal motion as to his convictions for possession, trafficking, and use of vehicle.

## II. THE POSSESSION OFFENSE [8]

■ McNulty argues that the State failed to establish that he was an accomplice to Tillery's possession of the cocaine. The State responds that there was sufficient evidence under the accomplice liability theory, *inter alia*, to sustain McNulty's possession conviction.

■ The governing provision, section 271 of Title 11, Delaware Code ("Section 271"), reads in relevant part: "A person is guilty of an offense committed by another person when[,] ... [i]ntending to promote or facilitate the commission of the offense[,] he

... [a]ids, counsels or agrees or attempts to aid the other person in planning or committing it[.]" 11 *Del.C.* § 271(2)(b). The State can secure a conviction for a possession charge based on a theory of accomplice liability under Section 271. *See Glendon v. State,* Del.Supr., 461 A.2d 1004, 1005 (1983). Section 271 requires that the State submit proof consistent with the following: "The defendants d[o] not have to specifically intend that the result ... should occur. As long as the result was a foreseeable consequence of the underlying felonious conduct their intent as accomplices includes the intent to facilitate the happening of this result." *Martin v. State,* Del.Supr., 433 A.2d 1025, 1029 (1981) (quoting *Hooks v. State,* Del.Supr., 416 A.2d 189, 197 (1980)), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982); *see Glendon,* 461 A.2d at 1005–1006 (rejecting under Section 271 an insufficiency of evidence claim because the State produced some evidence—namely, acceptance of a $25 payment for a principal in drug transaction—that defendant "intended to aid or facilitate the principal's conduct[ ]"). Once the State produces sufficient evidence under the accomplice theory, it need not further prove that the defendant also had actual possession of the cocaine. *See Glendon,* 461 A.2d at 1005.

■ In the instant case, McNulty argues that the evidence relating to his being the only one who could identify the buyer would support liability only for facilitating **delivery, not possession,** of cocaine. The flaw in this argument is that the indictment charges: "[R]ONALD MCNULTY[ ] AND MARION TILLERY ... did possess Cocaine ... **with the intent to deliver same.**" (Emphasis added). The buyer-identification evidence, in

---

5. Lewandowski subsequently informed the police that additional cocaine could be found at Cooper's apartment. A search of that apartment led to recovery of more cocaine and some drug paraphernalia. The charges involved here do not stem from this search, however.

6. As to the latter, Lewandowski testified to the contrary at trial.

7. The State does not argue that this failure to renew the motion constituted waiver and thus we assume for purposes of this appeal that it did not.

8. As a preliminary matter, we note that our review of McNulty's contentions is controlled by the following guidelines: the scope of review is *de novo* and the standard is "whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [a] defendant guilty beyond a reasonable doubt." *Monroe v. State,* Del.Supr., 652 A.2d 560, 563 (1995) (citation omitted).

conjunction with Schofield's testimony regarding McNulty's suspicious movements in the back seat of the car upon discovery of police pursuit, is sufficient for a rational trier of fact to have concluded that McNulty facilitated Tillery's possession with intent to deliver. Accordingly, the possession conviction based on the accomplice liability theory is affirmed.[9]

## III. THE TRAFFICKING OFFENSE

McNulty argues that this Court should reverse the trafficking offense because of an absence of any supportive evidence. The State responds that it presented proof sufficient to support the conviction under a constructive possession theory,[10] arguing that McNulty had the power to control the destiny of the cocaine because only he could identify the buyer.

■ In order for the State to withstand a post-guilty verdict challenge to a possession offense, it needs to have introduced sufficient evidence for a jury to conclude that a defendant was in actual or constructive possession of the subject narcotic. *See* 16 *Del.C.* § 4753A(a)(2); *see also* 28 C.J.S. *Drugs & Narcotics* § 158, at 230 (1974 & Supp.1994) ("In order to constitute the crime of unlawful possession of narcotics or dangerous drugs, actual physical possession is not required, and possession may be constructive as well as actual and physical.").[11] Where the State chooses to pursue a constructive possession theory, it must produce evidence of a defendant's "dominion and control" over the substance. *E.g., Potts v. State,* Del.Supr., 458 A.2d 1165, 1167 (1983); *Jackson v. State,* Del.Supr., 254 A.2d 852, 853 (1969); *see* 16 *Del.C.* § 4701(28) (" 'Possession,' in addition to its ordinary meaning, includes location in or about the defendant's person ... vehicle or otherwise within his reasonable control[ ]"); *see also* 28 C.J.S. *Drugs & Narcotics* § 157, at 228 (1974 & Supp.1994) ("Dominion and control over a narcotic or dangerous drug is an essential element of the criminal offense of possession of such substance.").

■ Dominion and control is presumed where the defendant is a custodian of the vehicle. *Holden v. State,* Del.Supr., 305 A.2d 320, 322 (1973); *Marvel v. State,* Del.Supr., 290 A.2d 641, 644 (1972) (noting that presumption is rebuttable). "The 'possession' of a drug by a passenger in an automobile [requires, however,] ... more than proximity to, or awareness of, the drug in the car. To warrant a conviction[ ], the State has the burden of proving a 'possession' that amounts to a conscious 'dominion, control, and authority' over the drug." *Holden,* 305 A.2d at 321 (reversing on insufficiency of evidence grounds the convictions of defendants who were merely present in car and aware of presence of drugs); *see also Speight v. United States,* D.C.App., 599 A.2d 794, 796 (1991) ("[I]n order to prove constructive possession, the government must show: (1) that [the defendant] knew of the location of the drugs; (2) that he had the ability to exercise dominion and control over them; and (3) that he intended to guide their destiny.").

"If the accused is found near the drugs, this may establish a prima facie case of constructive possession **if there also is evidence linking the accused to an ongoing criminal operation of which possession is a part.**" *Earle v. United States,* D.C.App., 612 A.2d 1258, 1265–66 (1992) (emphasis added); *accord Speight,* 599 A.2d at 797; *Curry v. United States,* D.C.App., 520 A.2d 255, 263 (1987); *Wells v. United States,* D.C.App., 515 A.2d 1108, 1113 (1986); *United States v. Hubbard,* D.C.App., 429 A.2d 1334, 1338, *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981). In *Hubbard,* the court reversed a grant of a motion for judgment of acquittal with regard to a possession of narcotics charge. *Hubbard,* 429 A.2d at 1338. The court accepted the government's argument that because the defendant, *inter alia,* directed a purchaser to a seller, the defendant was in constructive possession of the

---

9. Given this holding, we do not address the State's alternative constructive possession argument with regard to this offense.

10. The State did not produce any proof that McNulty actually possessed the cocaine.

11. *See also State v. Schmidt,* 110 N.J. 258, 540 A.2d 1256, 1260–65 (1988) (discussing extensively the historical development of "possession").

narcotic. *Id.* In *Wells,* the court rejected a defendant's insufficiency of evidence claim because he played one of three crucial roles in an ongoing criminal enterprise, namely possession of illegal narcotics, involving two other defendants. *Wells,* 515 A.2d at 1114 (defendant carrying water necessary to dilute heroin and flush syringe). The court held that such involvement constituted constructive possession of the heroin. *Id.*

■ Suspicious action on the part of a defendant can also bolster a constructive possession theory. Flight in a vehicle containing illegal narcotics upon discovery by police officers "constitutes strongly corroborative circumstantial evidence from which [a] jury reasonably could infer [defendant's] association with his two passengers with a common purpose to commit a crime. From the plain view presence of the narcotics paraphernalia the jury could infer further that the criminal purpose was [constructive] possession of those implements." *United States v. Covington,* D.C.App., 459 A.2d 1067, 1071–72 (1983). Even physical evasiveness short of flight is supportive circumstantial evidence of constructive possession. *Potts,* 458 A.2d at 1167 (defendant running from kitchen where drugs were located to bedroom upon police's arrival at residence); *see also Thompson v. United States,* D.C.App., 567 A.2d 907, 909 (1989) (defendant hiding behind partition in apartment that was subject of seizure while officers questioned other suspect). Ambiguous "furtive gestures," however, are not sufficient to provide the basis for conviction. *In re T.M.,* D.C.App., 577 A.2d 1149, 1153–54 (1990) (defendants' scurrying under bed covers upon raid by police officers of residence insufficient to prove they constructively possessed a pistol and ammunition).

■ In the instant case, the State presented evidence that McNulty, a non-custodian,[12] was in close proximity to the cocaine within the car and that he was aware of the drug's presence. Such evidence, standing alone, would be insufficient to sustain the

conviction for trafficking. *See, e.g., Holden,* 305 A.2d at 321. Thus, only if the record contains "[other] evidence linking [McNulty] to an ongoing criminal operation of which possession is a part," *see, e.g., Earle,* 612 A.2d at 1265–66, can his conviction be affirmed.

The "ongoing criminal operation" involved here is the possession offense, the underlying facts of which are sufficiently supported by evidence, as discussed *supra* in part II. The "[other] evidence" linking McNulty to that criminal enterprise is twofold. First, McNulty was the only person who could identify the buyer, *see Hubbard,* 429 A.2d at 1338, and thus he was a necessary (but not sufficient) link in the chain of the drug delivery, *see Wells,* 515 A.2d at 1114. Second, Schofield testified that he saw McNulty acting suspiciously—"ducking back and forth, looking back at [him]"—upon discovery that a police unit was in pursuit. These "furtive gestures," standing alone, are insufficient to sustain McNulty's conviction, *see T.M.,* 577 A.2d at 1153–54, for they do not rise to the level of a suspicion of guilt due to flight, *see Covington,* 459 A.2d at 1071–72, or secretion, *see Potts,* 458 A.2d at 1167; *Thompson,* 567 A.2d at 909. In conjunction with the other evidence discussed above, however, a reasonable jury could find that McNulty constructively possessed the cocaine.[13]

## IV. THE USE OF VEHICLE OFFENSE

McNulty argues that the use of vehicle offense was not supported by sufficient evidence. The State raises two theories that purportedly support accomplice liability with regard to this charge. First, the State relies on McNulty's alleged critical role as identifier of the buyer in the overall drug transaction. Second, the State argues that McNulty was an accomplice as to Lewandowski.

■ The use of vehicle offense is described in pertinent part in the indictment as follows: "[D]EBRA LEWANDOWSKI, RONALD MCNULTY, AND MARION

---

12. The State does not contend that McNulty was a custodian.

13. Given this holding, we need not address the State's alternative accomplice liability theory as

to this offense, or the State's assertion during oral argument that the conspiracy conviction requires a finding that McNulty constructively possessed the cocaine as a matter of law.

TILLERY ... did knowingly keep a vehicle, which is used for keeping controlled substances in violation of Chapter 47, Title 16 of the Delaware Code of 1974, as amended, as set forth in Counts I [the trafficking offense] and/or II [the possession offense] of this Indictment." The only evidence relating to this charge was that Lewandowski owned and drove the subject vehicle, and that Tillery carried the cocaine to the car and subsequently attempted to dispose of it after the police stopped the vehicle. The evidence relating to McNulty's exclusive ability to identify the buyer had no relevance to McNulty's having "facilitated the commission of the offense," see 11 Del.C. § 271(2)(b), the pertinent offense under accomplice liability being Lewandowski's (or, theoretically, Tillery's) "knowingly keep[ing] a vehicle," see 16 Del.C. § 4755(a)(5). Thus, the use of vehicle conviction is reversed and remanded to the Superior Court for an entry of a judgment of acquittal. See Monroe, 652 A.2d at 567–68 (holding that the Court must remand for entry of a judgment of acquittal when it reverses a conviction based on a lack of sufficient evidence).

## V. CONCLUSION

Because the State failed to establish any evidence relating to the use of vehicle offense, the Court **REVERSES** and **REMANDS FOR ENTRY OF A JUDGMENT OF ACQUITTAL** as to that count. As to the possession and trafficking offenses, the Court **AFFIRMS** both convictions based, respectively, on the accomplice and constructive possession theories, and **REMANDS** the case for resentencing. Jurisdiction is not retained.