Wendell W. MOTEN, Appellant

v.

UNITED STATES, Appellee.

No. 11–CM–1519.

District of Columbia Court of Appeals.

Argued Nov. 15, 2012.
Decided July 3, 2013.

William Francis Xavier Becker, Rockville, MD, for appellant.

Kristina L. Ament, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and Elizabeth Trosman and Peter Taschenberger, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY and EASTERLY, Associate Judges, and REID, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

Following a bench trial, appellant Wendell W. Moten was convicted of one count

of soliciting prostitution, in violation of D.C.Code § 22–2701 (2009 Supp.). On appeal, appellant argues that although the statute defined solicitation for prostitution as a crime, it prescribed no corresponding penalty and that, without a penalty, he committed no crime. Alternatively, appellant argues that there was insufficient evidence to support his conviction. We hold that the Council of the District of Columbia's imprecise drafting, which has since been rectified, did not omit a penalty for solicitation and that there was sufficient evidence to find appellant guilty beyond a reasonable doubt.

## I.

Before addressing the facts of this case, we first consider appellant's statutory challenge.[1] In the Omnibus Public Safety and Justice Amendment Act of 2009, the D.C. Council amended D.C.Code § 22–2701 to provide that:

(a) It is unlawful for any person to *engage in prostitution or to solicit for prostitution.*

(b)(1) Except as provided in paragraph (2) of this subsection, a person convicted of *prostitution* shall be:

(A) Fined not more than $500, imprisoned for not more than 90 days, or both, for the first offense; and

(B) Fined not more than $1,000, imprisoned not more than 180 days, or both, for the second offense.

(2) A person convicted of prostitution who has 2 or more prior convictions for prostitution, not committed on the same occasion, shall be fined not more than $4,000, imprisoned for not more than 2 years, or both.

(c) For the purposes of this section, a person shall be considered as having 2 or more prior convictions for prostitution if he or she has been convicted on at least 2 occasions of violations of:

(1) This section;

(2) A statute in one or more other jurisdictions prohibiting prostitution; or

(3) Conduct that would constitute a violation of this section if committed in the District of Columbia.

(emphasis added). The 2009 Amendment was in force when appellant was arrested and at the time of his trial and sentencing. Prior to the 2009 amendment, the statute provided, in relevant part:

It is unlawful for any person to engage in prostitution or to solicit for prostitution. The penalties for violation of this section shall be a fine of $500 or not more than 90 days imprisonment, or both, for the first offense, a fine of $750 or not more than 135 days imprisonment, or both, for the second offense, and a fine of $1,000 or not more than 180 days imprisonment, or both, for the third and each subsequent offense.

---

1. Whereas appellant argues that this challenge merits *de novo* review because it presents an issue of statutory interpretation, the government argues that plain error review applies because appellant raises this issue for the first time on appeal. We need not resolve this dispute because the outcome would be the same under either standard of review. That is, if we were to accept appellant's argument that he did not commit a crime because the 2009 statute did not prescribe a penalty for solicitation of prostitution, he would sur-

mount the more stringent test applied in plain error review. *See Mitchell v. District of Columbia,* 741 A.2d 1049, 1052–53 (D.C.1999) (recognizing that "[i]t would be both an obvious error and a miscarriage of justice for a defendant to stand convicted of an offense which the law does not make a crime"). However, as we discuss *infra,* we conclude that the 2009 statute did prescribe a penalty for solicitation of prostitution. Therefore, appellant cannot establish error under either *de novo* or plain error review.

D.C.Code § 22–2701(1) (2007 Supp.). Therefore, whereas the 2007 version of § 22–2701 generally applied a penalty to "violation[s] of this section," appellant argues that the 2009 statute limited the application of penalties to those convicted of engaging in prostitution, not solicitation for prostitution. Notably, the D.C. Council has since amended § 22–2701, "by striking the word 'prostitution' wherever it appears and inserting the phrase 'prostitution or soliciting for prostitution' in its place."[2] Receiving Stolen Property and Public Safety Amendment Act of 2011, 2011 D.C. Sess. Law 19–120, Act 19–262. Thus, our interpretation of § 22–2701 is limited to solicitation cases prosecuted between December 2009 and April 2012.

■ Appellant invokes the maxim of criminal law that "a crime is made up of two parts, forbidden conduct and a prescribed penalty. The former without the latter is no crime." 1 Wayne R. LaFave, Substantive Criminal Law § 1.2(d) at 17 (2d ed. 2003). He argues that because the 2009 amendment did not specify a penalty for solicitation of prostitution, solicitation was not a crime under § 22–2701 (2009 Supp.).[3] In addition, appellant relies upon the Supreme Court's ruling in *United* *States v. Evans,* 333 U.S. 483, 486, 68 S.Ct. 634, 92 L.Ed. 823 (1948), arguing that because "defining the crime and fixing the penalty is a legislative function," "[i]t is not permissible for the trial court to insert the missing penalty provision."

In *Evans,* the Court acknowledged that "given some legislative edict, the margin between the necessary and proper judicial function of construing statutes and that of filling gaps so large that doing so becomes essentially legislative, is necessarily one of degree." *Id.* at 486–87, 68 S.Ct. 634. Evans challenged the application of § 8 of the Immigration Act of 1917, which created additional penalties per alien landed or brought into the United States. The language of § 8 was ambiguous as to whether the additional penalties applied to those who concealed or harbored aliens in addition to those who landed or brought aliens into the country. *Id.* at 483–84, 68 S.Ct. 634. Ultimately, the susceptibility of § 8 to "at least three, and perhaps four, possible yet inconsistent answers on the statute's wording," *id.* at 484, 68 S.Ct. 634 hindered the Court from reaching a "reasonable certainty in asserting that Congress by necessary implication intended to

---

2. The amendment became effective on April 20, 2012. The statute now provides:

    (a) It is unlawful for any person to engage in prostitution or to solicit for prostitution.
    (b)(1) Except as provided in paragraph (2) of this subsection, a person convicted of prostitution or soliciting for prostitution shall be:
    (A) Fined not more than $500, imprisoned for not more than 90 days, or both, for the first offense; and
    (B) Fined not more than $1,000, imprisoned not more than 180 days, or both, for the second offense.
    (2) A person convicted of prostitution or soliciting for prostitution who has 2 or more prior convictions for prostitution or soliciting for prostitution, not committed on the same occasion, shall be fined not more

than $4,000, imprisoned for not more than 2 years, or both.
D.C.Code § 22–2701 (2012 Supp.).

3. Appellant also alleges that the rule of lenity requires that the statute should be construed in his favor. This argument is without merit because "the rule of lenity only applies if, after considering text, structure, history, and purpose, ... the court must simply guess as to what the legislature intended." *Barber v. Thomas,* 560 U.S. 474, 130 S.Ct. 2499, 2508–09, 177 L.Ed.2d 1 (2010) (citations and internal quotation marks omitted). As discussed in the following paragraphs, in light of the available legislative history for D.C.Code § 22–2701, we need not "simply guess what the statute means" to determine the penalties for those found guilty of soliciting for prostitution. *Id.*

extend the penalties originally and still clearly provided for smuggling to all offenses covered by the language defining the crimes." *Id.* at 489, 68 S.Ct. 634. Moreover, the legislative history was unclear and unhelpful; it established that despite having received repeated requests from immigration authorities to clarify the penalty provisions and having notice of conflicting judicial decisions interpreting § 8, Congress "either refused or failed" to clarify the penalties. *Id.* at 491–92, 68 S.Ct. 634. Consequently, the Court concluded that the task was "outside the bounds of judicial interpretation." *Id.* at 495, 68 S.Ct. 634.

▮▮▮▮ Here, unlike *Evans*, the language of the statute, its legislative history, and the Council's subsequent actions render our task of interpreting D.C.Code § 22–2701 (2009 Supp.) within the "necessary and proper judicial function of construing statutes." *Id.* at 486, 68 S.Ct. 634. Whereas subsection (a) of § 22–2701 unmistakably prohibits solicitation by stating "[i]t is unlawful for any person to engage in prostitution or to solicit for prostitution," subsection (b) created penalties for those convicted of "prostitution." Due to this wording, the penalties section in the 2009 version of § 22–2701 is subject to two possible interpretations. It is unclear whether the use of "prostitution" in subsection (b) was shorthand encompassing both "engaging" and "soliciting" in prostitution referenced in (a), or whether "prostitution" in subsection (b) is limited to the act of "prostitution" as defined by the subsequent section, § 22–2701.01 (2007 Supp.), which created separate definitions for "prostitution" and "solicitation for prostitu-

tion." [4] We are inclined to favor the first interpretation given the rule of statutory interpretation that, if a "literal interpretation of the statute would lead to an absurd result, the court will follow the legislative intent despite literal wording." *Haney v. United States,* 473 A.2d 393, 394 (D.C. 1984); *see also Jeffrey v. United States,* 892 A.2d 1122, 1128 (D.C.2006) ("We must also be mindful that our interpretation is not at variance with the policy of the legislation as a whole, requiring that we remain more faithful to the purpose than to the word." (citation and internal quotation marks omitted)). Ultimately, "the courts are to construe statutes in a manner which assumes that [the legislature] has acted logically and rationally." *Haney, supra,* 473 A.2d at 395. As subsection (a) explicitly prohibits two types of "prostitution" crimes: "engaging in" and "soliciting for," limiting the penalties for "prostitution" delineated in section (b) to only to those persons who "engag[e] in" prostitution and excluding those who "soliticit[ ] for" prostitution, would produce an absurd result. That is, a defendant would receive no penalty for engaging in the prohibited conduct of soliciting for prostitution.

The legislative history further establishes that the Council intended to provide the same penalties for soliciting for and engaging in prostitution. Congress first criminalized solicitation for prostitution in 1892, and it has remained a crime in the District of Columbia ever since. Act of July 29, 1892, ch. 320, sec. 7, 27 Stat. 323; *see also United States v. Strothers,* 97 U.S.App.D.C. 63, 64, 228 F.2d 34, 35 (1955) (quoting statute). Indeed, the act of "prostitution" was not even a crime until

---

4. D.C.Code § 22–2701.01 (2007 Supp.) defined "prostitution" as "a sexual act or contact with another person in return for giving or receiving a fee" and "solicitation for prostitution" as "to invite, entice, offer, persuade, or agree to engage in prostitution or address for the purpose of inviting, enticing, offering, persuading, or agreeing to engage in prostitution."

2006.[5] COUNCIL OF THE DISTRICT OF COLUMBIA, COMM. ON THE JUDICIARY, "OMNIBUS PUBLIC SAFETY ACT OF 2006" at 2 (2006). When Council criminalized the act of prostitution, it did not differentiate between the penalties for engaging in prostitution and soliciting for prostitution. *See, supra,* D.C.Code § 22–2701(1) (2007 Supp.) ("It is unlawful for any person to engage in prostitution or to solicit for prostitution. The penalties for violation of this section shall be . . . .").

Moreover, when the Council amended § 22–2701 again in 2009, it did so as part of the wide-sweeping "Omnibus Public Safety and Justice Amendment Act of 2009" (hereinafter the "2009 Omnibus Act"). D.C. Law 18–88, § 211 (2009). In a section explaining the rationale for each amendment in the 2009 Omnibus Act, the report prepared by the Council's Committee on the Judiciary (hereinafter the "Committee Report") explained that the new provision:

> [W]ould amend D.C. Official Code § 22–2701 to establish a third conviction for prostitution or solicitation for prostitution as a felony offense. Heightening the consequence for repeated violations of this law is consistent with other parts of this legislation where crimes with high recidivism and seemingly indeterminate consequences are being targeted.

COUNCIL OF THE DISTRICT OF COLUMBIA, COMM. ON THE JUDICIARY, "OMNIBUS PUBLIC SAFETY ACT AND JUSTICE AMENDMENT ACT OF 2009" at 17 (2009). In addition, the Committee Report's brief "section by section analysis" concisely states that the amendment "[p]rovides that the third penalty for prostitution or solicitation shall result in a felony." *Id.* at 43. There is nothing in the legislative history that indicates that the

Council sought to alter the *status quo* regarding the identical penalties for "engaging in" and "soliciting for" prostitution. Instead, the provisions from the Committee Report indicate that the Council intended to increase penalties for both soliciting for and engaging in prostitution for the sake of deterring recidivism, and that by amending § 22–2701 in 2009, the Council did not intend to remove the penalties for those who solicit for prostitution.

Finally, the legislative history of the current version of § 22–2701 (2012 Supp.) provides additional support for our interpretation of the 2009 amendment to § 22–2701—i.e., that the Council meant to refer to both "engaging in" and "soliciting for" prostitution in subsection (b) of the 2009 statute. *See Washington Gas Light v. Pub. Serv. Comm'n of the District of Columbia,* 982 A.2d 691, 721 (D.C.2009) (finding support for the court's reading of a statute from two subsequent amendments, but cautioning that " 'subsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress.' " (quoting *Pension Ben. Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990))). In its Report on the 2012 amendment, the Committee on the Judiciary (hereinafter the "Committee") addressed this issue directly, stating: "[T]he aim of the 2009 statute . . . was clearly to increase the penalty for repeated convictions; not to eliminate the penalty for solicitation." COUNCIL OF THE DISTRICT OF COLUMBIA, COMM. ON THE JUDICIARY, REPORT ON BILL 19–215, "RECEIVING STOLEN PROPERTY AND PUBLIC SAFETY AMENDMENTS ACT OF 2011," at 8 (2011). Further, the Committee recognized that while "the use of the shorthand 'prostitution'[ ] clearly intended to encompass both prostitution and

---

**5.** Conversely, in *Evans,* the Supreme Court considered whether Congress intended to *extend* existing penalties for smuggling aliens to

the newly-criminalized acts of concealing and harboring aliens. 333 U.S. at 489, 68 S.Ct. 634.

soliciting for prostitution," it "has created an unnecessary issue on appeal."[6] *Id.* Thus, the Committee determined that "[a]lthough prosecuting and penalizing persons for soliciting for prostitution under the current law [i.e. the 2009 statute] is sound, the Committee intends to remove any possible argument otherwise." *Id.*

Given the unambiguous and explicit intent expressed in the legislative history, we conclude that the Council intended the penalties for solicitation of prostitution to remain identical to the penalties for engaging in prostitution in the 2009 statute. We therefore hold that even under the more exacting *de novo* standard of review, the trial judge did not err by sentencing appellant for solicitation of prostitution pursuant to D.C.Code § 22–2701 (2009 Supp.).

## II.

■ We next consider appellant's alternative argument that there was insufficient evidence to prove beyond a reasonable doubt that appellant solicited for prostitution.

## A.

The only evidence adduced at trial to support appellant's conviction was the testimony of the government's witness, Metropolitan Police Department (MPD) Officer Diane Davis. Prior to her encounter with appellant, Officer Davis had spent approximately three years working as a vice officer and participated in hundreds of arrests for solicitation of prostitution while undercover. On the night of December 31, 2010—New Year's Eve—Officer Davis was working undercover as a prostitute. While standing alone on the south side of the 1600 block of New York Avenue, N.E., she heard appellant, who was standing approximately fifty feet away on the north side of the street, yell "hey" to her.[7] Officer Davis asked appellant if she should cross New York Avenue; appellant did not respond, and Officer Davis crossed the heavily-trafficked thoroughfare anyway.

Once they were standing face-to-face, appellant asked Officer Davis what she was doing and she replied that she was "looking for dates." Appellant responded that he was "young and horny," and that he had "weed" and a "warm place to stay." He also asked whether she could "handle all of this." Officer Davis stated that she would like to have some money and asked if she could see the weed. Appellant responded that there were police all over the place. Davis said, "Okay, I guess it's weed and a place," to which appellant responded, "All you can handle with my horny self." Officer Davis testified that, at that point in their conversation, she "reiterated the fact that okay, I'm going to have some weed for full sex and a warm place to stay. He said 'okay'...." However, on cross-examination, Officer Davis acknowledged that appellant did not say "okay" in response to her clarification that she would get "weed" and a "warm place to stay" in exchange for "full sex." After Officer Davis determined that she and appellant had reached the agreement to exchange drugs and shelter for sex, she signaled the

---

6. The Committee conceded that "[i]t is less than ideal ..." that the penalty section specifies "prostitution" and is silent about "soliciting for prostitution. This silence was not intended to have meaning." COUNCIL OF THE DISTRICT OF COLUMBIA, COMM ON THE JUDICIARY, REPORT ON BILL 19–215, "RECEIVING STOLEN PROPERTY AND PUBLIC SAFETY AMENDMENTS ACT OF 2011," at 8 (2011).

7. During cross-examination, counsel for appellant raised the possibility that appellant had actually been yelling at a group who emerged from the gas station behind Officer Davis. However, Officer Davis insisted that she had no reason to believe that appellant was not directing his attention at her.

MPD arrest team to move in, and she began to walk away.[8] Officer Davis testified that at that point, appellant asked her "Where are you going?," but that he did not try to stop her from leaving or say that he thought they had a deal.[9] Throughout the conversation, appellant was flirtatious and in a good mood.

## B.

"In a sufficiency challenge we view the evidence in the light most favorable to the government, draw all reasonable inferences in the government's favor, and defer to the factfinder's credibility determinations." *Dunn v. United States,* 976 A.2d 217, 221 (D.C.2009) (citation omitted). "In a case coming to us after a non-jury trial, such as this one, we will not reverse a conviction for insufficient evidence unless appellant establishes that the trial court's factual findings were 'plainly wrong' or 'without evidence to support them.'" *Lewis v. United States,* 938 A.2d 771, 781 (D.C. 2007) (brackets and citations omitted). Nevertheless, "[i]n our review we are especially mindful that to warrant conviction the evidence must have been sufficient to sustain a finding beyond a reasonable doubt that appellant's conduct was for the purpose of prostitution." *Ford v. United States,* 498 A.2d 1135, 1138 (D.C.1985) ("*Ford I* ").

As noted above, D.C.Code § 22–2701.01(7) (2007 Supp.) defined to "solicit for prostitution" as "to invite, entice, offer, persuade, or agree to engage in prostitution or address for the purpose of inviting, enticing, offering, persuading, or agreeing to engage in prostitution." In turn, "prostitution" is defined as "a sexual act or contact with another person in return for

giving or receiving a fee." D.C.Code § 22–2701.01(3) (2007 Supp.). Importantly, "[t]o establish the offense of solicitation it is not necessary to prove any particular language or conduct." *Ford I, supra,* 498 A.2d at 1138 (citations and brackets omitted). "Ordinarily it is a question of fact whether the acts and words of the defendant, viewed in the light of surrounding circumstances, constitute the inviting or enticing prohibited by the Act." *Id.* (citations omitted).

"We have long held that the trial court is in the best position to observe and assess the demeanor of the witnesses." *Poole v. United States,* 929 A.2d 413, 415 (D.C.2007) (citations and internal quotation marks omitted). The trial court found that Officer Davis was a credible witness because she was straightforward and non-defensive. Accordingly, we accept this credibility determination and consider whether Officer Davis's testimony established beyond a reasonable doubt that appellant solicited for prostitution. Officer Davis testified that, when she informed appellant that she was "looking for dates," appellant responded that he was "horny," and "had weed and a warm place to stay." Moreover, after appellant made the initial offer, Officer Davis testified that she said, "Okay, I guess it's weed and a place," to which appellant responded, "All you can handle with my horny self." This conversation goes beyond appellant's allegation that the conversation amounted to mere "boy-meets-girl" flirtation; the evidence establishing that Officer Davis informed appellant that she was "looking for dates" and appellant told her that he was "horny" alleviates any concern that appellant was

8. Officer Davis conceded that appellant never asked how much she would charge or, "will you have sex with me?" Further, appellant never mentioned any type of intercourse.

9. During cross-examination, appellant elicited that this detail was not included in the police report or in her notes.

unaware of the illicit nature of their arrangement. Viewing this evidence in the light most favorable to the government, we hold that it was sufficient to support appellant's conviction of solicitation.

■ Appellant argues that, because appellant did not reference a specific sexual act or agree to a monetary exchange, the nature of their interaction was subject to various interpretations, and that we need not defer to Officer Davis's perception of the exchange. We disagree. First, we do not require the government to prove "any particular language." *Ford I, supra,* 498 A.2d at 1138. Instead, we look to appellant's conduct or words "in light of the surrounding circumstances." *Id.* Here, appellant informed a stranger, whom he met on a busy thoroughfare, that he was "horny" and offered her marijuana and shelter.[10] Such circumstances "constitute the inviting or enticing prohibited by the Act." *Id.* Second, a "monetary exchange" is not an element of the solicitation statute. We have held that the requisite "fee" is not limited to money. *See Muse v. United States,* 522 A.2d 888, 890–91 (D.C.1987) (affirming solicitation conviction based upon proposed exchange of a gold necklace for sex). Here, appellant offered shelter and marijuana in exchange for sex.

Appellant also argues that his case is factually analogous to *Rose v. United States,* 535 A.2d 849, 852 (D.C.1987), and *Ford v. United States,* 533 A.2d 617, 625–626 (D.C.1987) (en banc) ("*Ford II*"),[11] wherein we concluded that there was in-

sufficient evidence to support convictions of the defendants because the evidence was limited to police officers' observations, which were made from a distance, of defendants in areas known for prostitution, wearing provocative clothes, flagging down motorists, and occasionally getting into the motorists' cars for several minutes. Yet, in those cases, the officers did not "overhear any of the conversations." *Rose, supra,* 535 A.2d at 852; *Ford II, supra,* 533 A.2d at 626. Here, appellant's conviction was not premised upon observations of his behavior from a distance. As aforementioned, it was based upon his very words that he was "horny" and his offer of marijuana and "a warm place to stay" in response to Officer Davis's statement that she needed money. Because Officer Davis's testimony is the only evidence in the record and we defer to the trial judge's determination that Officer Davis' testimony was credible, appellant has failed to establish "that the trial court's factual findings" were "plainly wrong" or "without evidence to support [them]." *Lewis, supra,* 938 A.2d at 783. Accordingly, we hold that the evidence was sufficient to prove beyond a reasonable doubt that appellant solicited for prostitution.

For the foregoing reasons, we affirm in all respects.

*So ordered.*

---

10. Case law establishes that it is immaterial whether Officer Davis initiated the interaction by crossing New York Avenue to meet appellant. *See Thompson v. United States,* 618 A.2d 110, 113 (D.C.1992) ("[T]his court has affirmed ... the convictions of individuals who clearly did not initiate the conversations for which they were arrested ... the mere fact that the other party initiated the conversation, or first suggested engaging in sexual activity, does not shield the 'invitee' from the reach of this statute.").

11. *Ford II, supra,* 533 A.2d 617, coincidentally involved the same appellant in *Ford I, supra,* 498 A.2d 1135. However, this court's en banc decision in *Ford II* addressed an issue that "was not raised, and therefore was not decided, by *Ford I.*" *Ford II, supra,* 533 A.2d at 624.